

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-1999

# A&H Sportswear Inc v. Victorias Secret

Precedential or Non-Precedential:

Docket 97-1570

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"A&H Sportswear Inc v. Victorias Secret" (1999). *1999 Decisions.* Paper 18.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/18

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1570

A&H SPORTSWEAR INC.; MAINSTREAM
SWIMSUITS, INC.,
        Appellants in No. 97-1570

v.

VICTORIA'S SECRET STORES, INC.;
VICTORIA'S SECRET CATALOGUE, INC.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cv-07408 )
(District Judge: Hon. Franklin S. VanAntwerpen)

Argued May 19, 1998

Before: SLOVITER, GREENBERG and GIBSON,*
Circuit Judges

Resubmitted December 14, 1998

Before: SLOVITER, GREENBERG and GIBSON,* Circuit
Judges

(Filed January 21, 1999)

_____

* Hon. John R. Gibson, United States Senior Circuit Judge for the
United States Court of Appeals for the Eighth Circuit, sitting by
designation.

Michael F. Snyder
Seidel, Gonda, Goldhammer &
 Abbott
Philadelphia, PA 19102

Norman Seidel
Laub, Seidel, Cohen & Hof
Easton, PA 18042

Arthur H. Seidel
Stephen J. Meyers (Argued)
Seidel, Gonda, Lavorgna & Monaco
Philadelphia, PA 19102

 Attorneys for A & H Sportswear
 Inc. and Mainstream Swimsuits,
 Inc., Cross-Appellants in No. 97-
 1570

H. Robert Fiebach
Cozen & O'Connor
Philadelphia, PA 19103

Frank J. Colucci (Argued)
Richard P. Jacobson
Colucci & Umans
New York, N.Y. 10022

 Attorneys for Victoria's Secret
 Stores, Inc. and Victoria's Secret
 Catalogue, Inc., Cross-Appellees in
 No. 97-1570

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This trademark infringement action was filed by A&H Sportswear Inc. and its affiliate, Mainstream Swimsuits, Inc., the maker and distributor respectively of swimwear under the trademark MIRACLESUIT (together "A&H"), against Victoria's Secret Stores, Inc. ("VS Stores"), and Victoria's Secret Catalogue, Inc. ("VS Catalogue"), (together

"VS"), a well-known manufacturer of lingerie and now swimwear. The District Court gave judgment for VS on A&H's claim that VS's use of THE MIRACLE BRA on its lingerie infringed the MIRACLESUIT trademark, finding that there was no likelihood of confusion. The District Court also found that VS had violated the Lanham Act by its use of THE MIRACLE BRA on its swimwear, finding a "possibility of confusion" with the MIRACLESUIT swimsuit made by A&H, and ordered certain relief.

VS appeals the judgment that THE MIRACLE BRA swimwear infringes A&H's MIRACLESUIT trademark (No. 97-1541), arguing that the District Court applied an erroneous standard of law. A&H filed a cross appeal (No. 97-1570) contending that the District Court clearly erred in failing to find a likelihood of confusion between THE MIRACLE BRA mark and A&H's prior MIRACLESUIT mark.

This panel of the court heard argument on the appeal and cross-appeal on May 19, 1998. Thereafter, we recommended that the court originate a rehearing en banc to review whether it wished to adhere to the standard of possibility of confusion applied by the District Court. After giving the parties an opportunity to be heard on that issue, the court voted to consider VS's appeal (No. 97-1541) en banc, but resubmitted A&H's cross-appeal (No. 97-1570) to the panel as not presenting any issue requiring en banc consideration. Accordingly, we turn to the issues raised on A&H's cross-appeal.

I.

FACTS AND PROCEDURAL HISTORY

The facts underlying this cross-appeal are set forth in the District Court's published opinion, A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 926 F. Supp. 1233 (E.D. Pa. 1996) (addressing liability).1 We will set forth the pertinent

---

1. The court's other published opinion in this case, A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 967 F. Supp. 1457 (E.D. Pa. 1997) (as amended), addresses remedies and relates solely to the appeal before the en banc court.

facts and procedural history needed to address the substance of this appeal, recognizing that our discussion will duplicate some of the material in the en banc opinion. The District Court's Findings of Fact from the opinion on liability are designated hereafter as FF.

A&H, a closely held Pennsylvania corporation and maker of 10% of the nation's swimsuits, was issued a trademark for its MIRACLESUIT on October 27, 1992; its affiliate, Mainstream Swimsuits, Inc., a Pennsylvania corporation, served as the exclusive distributor of the MIRACLESUIT through its SWIM SHAPER division. Both corporations are controlled by members of the Waldman family. FF 1-2.

The MIRACLESUIT was developed and subsequently marketed as a "control" suit whose patented fabric and design affords the wearer greater "hold-in" control of the hips and waist, which makes the wearer appear slimmer without the use of girdle-like undergarments. Most MIRACLESUITs contain underwire bras, are of a one-piece design, and retail for $45 to over $100. FF 14. Thefirst interstate use of the mark MIRACLESUIT and the first interstate sale of a MIRACLESUIT occurred in November 1991. FF 21. The name MIRACLESUIT was chosen because it was "unique, dynamic, exciting, and memorable." FF 22. In 1992, the MIRACLESUIT was widely advertised, shown, and discussed in trade shows, magazines and the electronic media. FF 27. The MIRACLESUIT was also sold for a brief time in the VS catalogue (1,700 suits were purchased by VS in 1992 and 1993), but the relationship was discontinued because in several instances VS failed to identify the swimsuit by its MIRACLESUIT trademark. FF 29, 30.

VS Stores, the nation's top retailer of lingerie, is a Delaware corporation headquartered in Columbus, Ohio, and operates over 650 stores throughout the country which focus on intimate apparel, with bra sales the leading product. FF 5. VS Catalogue, a Delaware corporation headquartered in New York City, is a mail order business with a much wider array of merchandise (including swimwear) sold through its over 300 million catalogues circulated each year. FF 6. The companies responsible for the stores and the catalogue are independent subsidiaries

4

of Intimate Brands, Inc., owned by The Limited, Inc., based primarily in London. FF 7.

In 1992, VS Stores began developing a cleavage-enhancing bra which was introduced (then unnamed) in each store in August 1993 and first appeared in the VS catalogue in February 1994. FF 12, 17, 19. The bra uses removable pads, lace, straps, and underwire to accentuate the wearer's bust. FF 15. VS Stores sought a name for its new push-up bra that had a "fresh, flirtatious fun attitude." It chose THE MIRACLE BRA name in December 1992, allegedly after a model tried the new bra and exclaimed, "Wow, this is a miracle!" FF 23. The name THE MIRACLE BRA was first used in VS Stores in November 1993. FF 19. VS Stores was issued a registration for its trademark THE MIRACLE BRA on August 9, 1994. FF 25. Since itsfirst brisk sales, THE MIRACLE BRA, which retails for under $20, has been heavily marketed and has generated over $132 million in sales. FF 69.

A&H, which did not initially object to VS's trademark use of THE MIRACLE BRA, did so after VS began to extend THE MIRACLE BRA into swimwear with its introduction of THE MIRACLE BRA bikini in the November 1994 VS catalogue and in ten VS stores as a test market. VS's sales of swimwear expanded rapidly, and in 1995 VS incorporated THE MIRACLE BRA design and trademark into a one-piece swimsuit.

In August 1994, even before its first sale, VS Stores applied for a registration of THE MIRACLE BRA trademark for swimwear. FF 34. In February 1995, the Patent and Trademark Office (PTO) refused the registration on the basis of A&H's prior registration of the MIRACLESUIT, although A&H had not interposed an objection to the registration. FF 31, 36. Apparently because it had been using THE MIRACLE BRA name in lingerie, neither VS Stores nor VS Catalogue conducted a separate trademark search of THE MIRACLE BRA trademark as it applied to swimwear. FF 35. In December 1994, just a month after the introduction of THE MIRACLE BRA swimwear collection, A&H filed this suit alleging, inter alia, infringement of its trademark MIRACLESUIT, and seeking a preliminary

injunction and damages. The District Court consolidated the injunction hearing with a bench trial on the merits.

Following a two-week bench trial, the District Court found no likelihood of confusion between THE MIRACLE BRA mark as applied to lingerie and the MIRACLESUIT mark. Accordingly, the court entered judgment for Victoria's Secret and against A&H on that claim of infringement. When VS appealed from the District Court's decision in favor of A&H with respect to THE MIRACLE BRA for swimwear, A&H filed this cross-appeal. We have jurisdiction under 28 U.S.C. S 1291.

II.

DISCUSSION

The MIRACLESUIT v. THE MIRACLE BRA for Lingerie

In a trademark infringement action, the "likelihood of confusion" between two marks is a factual matter, subject to review for clear error. Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 200 (3d Cir. 1995). Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are "left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). The District Court's conclusions of law are subject to plenary review. See Duraco Prods., Inc. v. Joy Plastic Enters., 40 F.3d 1431, 1438 (3d Cir. 1994).

In order for A&H, as the owner of a valid and legally protectable mark, to hold VS liable for trademark infringement under S 32 of the Lanham Act, it must show that VS has used a confusingly similar mark. Section 32(1) provides, in pertinent part:

>     Any person who shall, without the consent of the
>     registrant--
>
>     (a) use in commerce any reproduction, counterfeit,
>     copy, or colorable imitation of a registered mark in

6

connection with the sale, offering for sale,
distribution, or advertising of any goods or services
on or in connection with which such use is likely to
cause confusion, or to cause mistake, or to deceive;
. . . shall be liable in a civil action by the registrant
. . . .

15 U.S.C. S 1114(1) (emphasis added).

Similarly, S 43(a) of the Lanham Act, which governs
unfair competition claims, provides in pertinent part:

Any person who, on or in connection with any goods or
services, . . . uses in commerce any word, term, name,
symbol, or device . . . or any false designation of origin
. . . which--

(A) is likely to cause confusion, or to cause mistake,
or to deceive as to . . . the origin, sponsorship, or
approval of [his or her] goods, services, or
commercial activities by another person . . . shall be
liable in a civil action by any person who believes
that he or she is or is likely to be damaged by such
act.

15 U.S.C. S 1125(a)(1) (emphasis added).

The central inquiry in a trademark infringement case
focuses on the likelihood of consumer confusion. The
District Court determined that VS's use of THE MIRACLE
BRA mark with lingerie did not create a likelihood of
confusion with the MIRACLESUIT.

The test to be applied to determine likelihood of
confusion differs when the goods compete and when they
do not. Where the trademarks involved are not used on
directly competing merchandise we look to the ten "Scott
factors" set forth in Scott Paper Co. v. Scott's Liquid Gold,
Inc., 589 F.2d 1225, 1229 (3d Cir. 1978), sometimes also
called "Lapp factors" after Interpace Corp. v. Lapp, Inc., 721
F.2d 460 (3d Cir. 1983). The District Court sought to apply
those ten factors assiduously, and after analyses
summarized its conclusions as follows:

[W]e hold that with respect to the likelihood of
confusion between Plaintiffs' MIRACLESUIT and

7

Defendants' THE MIRACLE BRA, (1) the two marks are similar in that they share a dominant portion, the word "miracle," yet remain distinct by the addition of the word that follows (bra or suit) when designating those respective goods; (2) the marks are both strong in their respective industries which we believe are swimsuits for Plaintiffs' MIRACLESUIT and lingerie for Defendants' THE MIRACLE BRA. As those marks extend into the industry dominated by the other (i.e., MIRACLESUIT for lingerie or THE MIRACLE BRA for swimwear), the strength of the marks and the amount of protection they receive commensurately decrease; (3) the goods are in different price categories; (4) the Defendants had used their THE MIRACLE BRA mark for slightly over one year prior to an incident of actual confusion. The few incidents occurred just two months following Defendants' extension of THE MIRACLE BRA to swimwear, an industry in which Plaintiffs had already produced and registered their MIRACLESUIT for several years.[ ]; (5) based on the record before us, Defendants did not adopt its THE MIRACLE BRA mark with the conscious and deliberate bad faith intent to free-ride on the success of Plaintiffs' mark; (6) the evidence of actual confusion suggests it was Defendants' entry into swimwear rather than into the lingerie market with the name "miracle" that caused potential confusion among consumers; (7) the goods are marketed through the same media; (8) the products are marketed to women of similar age; (9) the goods serve different functions; and (10) the Plaintiffs' limited involvement in developing and manufacturing bras is not germane to our analysis where none of these efforts were conducted using marks or names at issue in this litigation. We therefore conclude that Plaintiffs have not met their burden under the Scott Paper standard and have not established a likelihood of confusion between their MIRACLESUIT swimsuit and Defendants' THE MIRACLE BRA (bra).

926 F. Supp. at 1263-64.

A&H argues, in essence, that the appropriate application of the ten-factor Scott/Lapp test required afinding of a

8

likelihood of confusion and hence a finding of infringement. We held in Fisons Horticulture, Inc. v. Vigoro Indus., 30 F.3d 466 (3d Cir. 1994), that the "weight given to each factor in the overall picture, as well as its weighing for plaintiff or defendant, must be done on an individual fact-specific basis." Id. at 476 n.11. We consider the factors seriatim.

Similarity of the Marks

A&H contends that inasmuch as the District Court found the marks were nearly identical by use of "miracle," it erred in finding that the addition of a descriptive term ("bra" for one and "suit" for the other) to the word lessened any confusion. We have previously stated that descriptive terms (such as "bra" and "suit") must be considered in assessing infringement. See generally Country Floors, Inc. v. Partnership of Gepner and Ford, 930 F.2d 1056, 1065 (3d Cir. 1991). In evaluating the effect of similarity, it is also relevant that the use of the housemark "Victoria's Secret" frequently accompanies THE MIRACLE BRA product. Similarly, the MIRACLESUIT swimsuits generally had a sewn-in label bearing either the name SWIM SHAPER or MIRACLESUIT, and, after August, 1994, also bore hangtags. The key finding by the District Court regarding similarity was, "We do not believe that the overall impression created by THE MIRACLE BRA bra and the MIRACLESUIT swimsuit is essentially the same." 926 F. Supp. at 1257-58 (emphasis added). This is significant because we have previously stated that it is the"overall impression" created by the marks that should be the central focus. Fisons, 30 F.3d at 478.

Strength of The Mark

The District Court found that the word "miracle" is "fanciful," deserving the highest protection, and, thus, when applied to lingerie or swimsuits, is a "strong mark." 926 F. Supp. at 1259. However, the strength of MIRACLESUIT and THE MIRACLE BRA and the amount of protection they receive decrease when each mark is extended into the other's industry. See id. at 1263.

A&H contends that the District Court failed to evaluate the commercial strength of the MIRACLESUIT mark in the context of its claim of reverse confusion, and we have found

9

no such discussion in the District Court's opinions. According to A&H, THE MIRACLE BRA presence in the marketplace overwhelmed the MIRACLESUIT mark such that consumers would likely be confused in thinking the senior MIRACLESUIT mark was attributed to the junior user, VS. The District Court did not so find, and we do not think such a finding was mandated by the evidence in the swimwear vs. lingerie inquiry. We leave A&H's contention regarding reverse confusion in the swimwear market to the decision in No. 97-1541.

The Price of the Goods, the Time Before Confusion and Actual Confusion

The District Court found that THE MIRACLE BRA and the MIRACLESUIT have different prices (under $20 compared to over $50 respectively), see id. at 1260, a finding that favors VS. This led the District Court to find that the difference between the prices of the lingerie and the swimsuits diminishes any likelihood of confusion between the products.

The court also noted the absence of any confusion arising from THE MIRACLE BRA for a year after it was introduced, and that only after THE MIRACLE BRA was extended to swimwear was there any incident of actual confusion. See id. at 1260.

Defendants' Intent

As intent has been held to play a role in the analysis of infringement, we look carefully at the District Court's finding that A&H failed to prove "bad faith or deliberate intent" to infringe by VS. Id. at 1261. The court reviewed the evidence A&H had presented in an effort to show intentional infringement, including the testimony of VS Stores's Marketing Director, and found that, despite VS's knowledge of the MIRACLESUIT mark and its failure to conduct an additional trademark search before it expanded THE MIRACLE BRA mark to swimwear, there was no bad faith on the part of VS. See id.

A&H cites authority that intent is not necessary to prove infringement and that good faith is not a defense to infringement. We do not disagree as to the law. However,

10

the District Court's conclusion that there was no likelihood of confusion did not rest on the intent of VS. We recognize that another court might have drawn a different inference from VS's prior knowledge of the MIRACLESUIT mark but note that there were numerous other relevant facts before the court. We cannot conclude that the District Court clearly erred in finding no intent to infringe by VS.

Similar Marketing/Media Channels & Customers

The District Court found that VS and A&H "promote their products through the same channels of trade and through the same media." Id. at 1262, FF 43. It also found that the target customer base for the MIRACLESUIT and THE MIRACLE BRA bra is similar. FF 38, 39. Not surprisingly, VS contends that the District Court weighed this factor too favorably to A&H, and notes in support of its contention of error that it sells THE MIRACLE BRA only through the VS catalogue and VS stores. There is support for the District Court's finding and we cannot characterize it as clearly erroneous.

Relationship of the Goods

Consistent with each party's tendency to challenge any finding that it deems adverse, A&H disputes the District Court's finding that, although related, swimwear and lingerie "serve different functions" and are "separate industries." Id. at 1262–63. A&H has filed a motion asking this court to take judicial notice that these industries are "so closely related in their channels of trade and appearance as to be, at times, indistinguishable." We deny the motion as it requires a factual determination we believe is inappropriate for judicial notice.

The reason we look to the relationship of the goods is to ascertain whether the goods were so related that a consumer would reasonably assume they were offered by the same source, thereby leading to confusion. See Fisons, 30 F.3d at 481. The District Court found that "the consuming public would [not] expect A&H or Mainstream . . . to manufacture products in the lingerie market." 926 F. Supp. at 1263. We find no clear error, particularly as A&H had only limited involvement in the bra industry and, as

11

the District Court noted, the products were sold in distinct manners.

A&H contends that the relationship between the products is further evidenced by VS's opposition to A&H's proposed registration of THE MAGIC BRA, a new product by A&H developed after the commencement of this lawsuit. A&H argues that because VS allegedly contends in the PTO opposition that the MAGIC BRA for swimsuits is confusingly similar to THE MIRACLE BRA for lingerie (a position it contends is contradictory to VS's arguments here), the District Court should have considered evidence of that PTO proceeding. Inasmuch as the facts sought to be introduced were post-trial, and the MAGIC BRA mark is different than the marks at issue here, the District Court did not abuse its discretion in refusing to consider that evidence.

Factor Summary

In balancing the relevant factors, no one of the Scott factors is more weighty than another except, perhaps, the similarity of the marks. See Fisons, 30 F.3d at 476 & n.11 (emphasizing similarity). There is certainly similarity between the marks at issue, but that similarity was discounted by the District Court because the marks were not identical in their entirety. In sum, the District Court weighed each factor as required. After reviewing the record and the parties' argument, we conclude that the court did not commit clear error in finding there was no likelihood of confusion between THE MIRACLE BRA mark as applied to lingerie and the MIRACLESUIT mark, and hence no infringement.2

───────────────────────────────────────────────────────────

2. A&H also appeals the District Court's rejection of its contention that VS violated the Pennsylvania Antidilution law, 54 Pa. Cons. Stat. Ann. S 1124, which provides for relief upon a showing of a "likelihood of injury
to business reputation or of dilution of the distinctive quality" of a registered mark. Id. The District Court noted that "predatory intent" was relevant in establishing an antidilution claim, 926 F. Supp. at 1265 (citing Nugget Distribs. Coop. v. Mr. Nugget, Inc., 776 F. Supp. 1012, 1024 (E.D. Pa. 1991)). Having found no bad faith on the part of VS, the court rejected the state claim. We find no error in the District Court's dismissal of this claim.

III.

CONCLUSION

For the reasons set forth, we will affirm the judgment of the District Court in favor of VS on A&H's claim arising out of THE MIRACLE BRA with lingerie.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit