**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1091 & 16-1119
_____

PETRON SCIENTECH, INC.;
YOGENDRA SARIN,

Appellants/Cross-Appellees in No. 16-1091

v.

RONALD P. ZAPLETAL;
ALUCHEM, INC. a/k/a The Aluchem Group
a/k/a The Aluchem Group Companies,

Appellees/Cross-Appellants in No. 16-1119

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 3-11-cv-07122)
District Judge:  Honorable Peter G. Sheridan

Submitted under Third Circuit LAR 34.1(a)
on January 26, 2017

Before:  CHAGARES, RESTREPO and ROTH, Circuit Judges

(Opinion filed: July 14, 2017)

_____

OPINION[*]

_____

ROTH, Circuit Judge

Petron Scientech, Inc., and Yogendra Sarin had numerous business dealings with Ronald P. Zapletal and Aluchem, Inc., over the course of several years. These dealings culminated in a joint venture that ultimately failed. Both sides then asserted contractual claims against each other. Zapletal and Aluchem also requested an award of attorney fees because they believed that Petron and Sarin had made frivolous claims. After a bench trial, the District Court held that no party was entitled to any damages or fees from any other party. Both sides appealed. We will affirm.

## I. Background

### A. Factual Background

In 1991, Sarin founded Petron, a chemical engineering company. Petron has developed a process that improves the environmental sustainability of an aspect of plastic-making. In 2007, hoping to profit from this technology, Zapletal and Sarin signed a Letter of Intent that proposed that a new company, to be formed and controlled by Zapletal and possibly several others, acquire Petron's assets. On July 2, 2007, Zapletal paid a $100,000 down payment, which would convert to a loan to Petron if the acquisition was not completed by October 14th, 2007. Formalizing this arrangement,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Zapletal sent a promissory note to Petron, which Sarin signed. The acquisition was never completed.

Subsequently, Sarin and Zapletal became aware of a business opportunity involving the construction of a chemical plant for Dow Chemical. In order to pursue this opportunity, on May 11, 2009, Sarin and Zapletal agreed to a joint venture. Their agreement, the "Green Biochemicals contract," created a new entity called Green Biochemicals, LLC. This entity was owned equally by Petron and Aluchem. The parties agreed that Zapletal, "as CEO of [Green Biochemicals], will arrange loans/grants, equity, government funding or private funding of $2.5 million for the first Dow project for [Green Biochemicals] as quickly as is possible." Then, "[f]rom initial funds arranged, [Green Biochemicals] will make a non recourse/non refundable cash payment of $1.0 million to Petron as upfront technology development and project support fee. Petron will retire a $100,000 Note to . . . Zapletal . . .." The parties further agreed that Sarin would contribute expertise in the development of these projects, for which he would be paid $250,000 annualy, and that Petron would receive certain technology license and development fees. While negotiating this agreement, Zapletal suggested to Sarin that he would be able to secure funding easily.

However, the Dow Chemical deal was never completed because Green Biochemicals was never able to secure a needed loan or grant from the Department of Energy. By December 2009, Sarin and Petron knew that the funding was not forthcoming, but the parties continued to seek licensing opportunities for Petron's plastic-making process. In March 2010, Green Biochemicals began negotiating terms of a

potential deal with Coca-Cola, which was interested in creating bottles using Petron's green technology. During the Coca-Cola negotiations, Sarin told Zapletal that Petron's financial situation was improving, and Zapletal requested payment on the promissory note, but no payment followed. By May 2011, the Coca-Cola deal failed because, again, Green Biochemicals was unable to secure loan or grant money.

In June 2011, after the Coca-Cola negotiations had failed, Zapletal sent Sarin a letter requesting payment on the promissory note by August 15, 2011. Sarin responded by letter, asserting that the amount owed under the promissory note was not yet due and that, because Petron and Sarin had fulfilled their obligations under the agreements creating Green Biochemicals, Zapletal and Green Biochemicals owed Sarin $1 million for four years of back pay and Petron $900,000 (that is, $1 million under the agreement offset by the $100,000 loan).

## B. Procedural Background

On November 18, 2011, Sarin and Petron filed a lawsuit in New Jersey Superior Court of Middlesex County against Zapletal and Aluchem. The plaintiffs alleged breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with economic benefit, knowing misrepresentation, and conversion. Sarin sought damages equal to the $1 million in salary that he had requested by letter from Zapletal, and Petron sought damages equal to the $1 million in technology development and project support fees that Sarin had requested in the same letter. On December 7, 2011, the defendants removed the case to federal court. On November 7, 2012, the defendants filed a counterclaim seeking damages of $100,000 for failure to satisfy the note. In

4

addition, the defendants filed a motion for attorney fees on the ground that the plaintiffs'

claims were frivolous.

A five day bench trial began on December 3, 2015. At the end of the final day of

trial, the District Court read its decision from the bench. The court concluded that neither

party was entitled to any remedy.

## II. Discussion[1]

Sarin and Petron have appealed, arguing that Zapletal breached the covenant of

good faith and fair dealing and that the termination clause of the contract was not their

sole remedy for breach. Thus, they argue that they should be awarded damages. Zapletal

and Aluchem have cross-appealed the denial of their counterclaim, arguing that Petron

still owes Zapletal under the terms of the promissory note and that their motion for

attorney fees should have been granted.

## A. Good Faith and Fair Dealing

On the good faith and fair dealing claim, the District Court found that Zapletal's

description of his ability to secure financing for Green Biochemicals's deals was mere

puffery and therefore not actionable. The plaintiffs do not contest that Zapletal's

statements were mere puffery. Instead, the plaintiffs argue that Zapletal, by engaging in

puffery, breached the implied covenant of good faith and fair dealing in the Green

Biochemicals contract,[2] which entitles them to damages. They argue that puffery is

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.
[2] *See Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey." (citing *Sons of*

5

inherently inconsistent with the duties imposed by the covenant of good faith and fair dealing.[3]  However, this argument is unpersuasive.  A breach of the covenant of good faith and fair dealing requires doing something "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract"[4] and requires bad motive or intention.[5]  Puffery is simply "[t]he expression of an exaggerated opinion . . . with the intent to sell a good or service,"[6] and it is common and ordinary among sellers.  It does not harm the rights of the buyer or demonstrate bad intentions on the part of the seller. Thus, mere puffery does not violate the covenant of good faith and fair dealing.[7]

## B. Termination Clause

The District Court held that Sarin and Petron's only remedy for Zapletal's failure to secure funding for the Dow Chemical project was to terminate the agreement.  The plaintiffs disagree; they argue that they should have been awarded expectation damages.[8]

Under New Jersey law, the usual remedy for breach of contract is to put the nonbreaching party in the same position as that party would have been in had the breach

---

*Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997))).

[3] This argument raises an issue of state law, so our review is plenary.  *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 369 (3d Cir. 1996).

[4] *Wilson*, 773 A.2d at 1126-27 (quoting *Sons of Thunder*, 690 A.2d at 587).

[5] *Brunswick*, 864 A.2d at 396 (quoting *Wilson*, 773 A.2d at 1130).

[6] Black's Law Dictionary (10th ed. 2014).

[7] The plaintiffs argue that Zapletal was subject to a heightened fiduciary duty as a party to a joint venture with Sarin.  At the time he was puffing, however, Zapletal was not yet a party to a joint venture with Sarin, so no heightened duties applied to him.

[8] This presents a question of contract interpretation based in part on facts adduced at trial, so we review the District Court's decision for clear error.  *See Ram Const. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052-53 (3d Cir. 1984).

not occurred.[9]  "What that position is depends upon what the parties reasonably expected."[10]  In particular, "the innocent party has a right to damages based on his expectation interest as measured by the loss in the value to him caused by the breaching party's nonperformance."[11]  However, contracting "parties can by agreement vary the rules" applicable to breach of contract, such as by "provid[ing] for a remedy such as repair or replacement in substitution for damages."[12]  The contract here did so provide:

> If [Green Biochemicals] is unable to complete a funding for the first project or is unable to provide Petron $1 million for upfront technology development and project support fee within 18 months from signing date, Petron will be free to cancel this contract and will have right to proceed with development of this business/similar projects with third parties.

Based on the contractual language and trial testimony, the District Court determined that this provision specifies what would happen if Green Biochemicals failed to secure funding and pay Petron $1 million.  Moreover, to the extent that Sarin also challenges the determination that he was not entitled to any salary, the contract provides, "[Sarin's s]alary will begin when first project funding is arranged."  Because funding was never arranged, Sarin was never entitled to salary.  Because the parties in fact did as provided in the contract, there is no further remedy available.

---

[9] *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 442 (N.J. 2004).

[10] *Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982).

[11] *Furst*, 860 A.2d at 442 (quoting Restatement (Second) of Contracts § 347(a)) (internal quotation marks and ellipses omitted).

[12] Restatement (Second) of Contracts § 346 cmt. a.  New Jersey has not expressly adopted this section of the Restatement, but it regularly relies on much of the rest of the Restatement with respect to damages.  *See, e.g.*, *Furst*, 860 A.2d at 442; *Donovan v. Bachstadt*, 453 A.2d at 166 (§ 351).  Thus, we expect that the New Jersey Supreme Court would apply this portion of the Restatement as well.  *See In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014) (holding that when a state supreme court has not ruled on the precise issue presented, we predict how that tribunal would rule).

## C. The Promissory Note

The District Court reasoned that the promissory note was "subsumed" into the Green Biochemicals contract, so termination of the Green Biochemicals contract also terminated Petron's obligation to repay the note. Thus, the District Court concluded that "there's no obligation of Mr. Sarin, under any theory I can think of, to repay [the] promissory note at this time." The defendants cross-appeal, claiming that this conclusion was clearly erroneous.

"Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are left with a definite and firm conviction that a mistake has been committed."[13] Under New Jersey law, contracts are to be interpreted according to "the intention of the parties to the contract as revealed by the language used,"[14] so we consider the text of the contracts together with extrinsic evidence adduced at trial.[15] Here, after review of the full record, including the trial transcript and after consideration of the intent of the parties as manifested in the documents and in their testimony, we find no clear error in the District Court's determination that the promissory note was subsumed into the contract so that

---

[13] *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 360 (3d Cir. 2007) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 191, 194 (3d Cir. 1999)).

[14] *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006) (quoting *Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953)).

[15] *See Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 419 (3d Cir. 2013) (observing that, under New Jersey law, extrinsic evidence is always admissible to aid in interpreting contracts).

termination of the contract also terminated the obligation to repay.  Therefore, we will affirm the judgment of the District Court on this issue.

## D. Attorney Fees

Defendants also claim that the District Court should have granted their motion for attorney fees.  They argue that plaintiffs' claims were frivolous or insubstantial and that it was an abuse of discretion not to award attorney fees.[16]  However, we do not believe that any of the arguments made in this case was sufficiently frivolous or insubstantial that denying an award of attorney fees was an abuse of discretion.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's judgment.

---

[16] Federal law and the laws of the states which govern the Green Biochemicals contract (New Jersey) and the promissory note (Colorado) permit an award of attorney fees when a party makes frivolous arguments.  *See* Fed. R. Civ. P. 11(c)(4); N.J. Stat. Ann. § 2A:15-59.1(a)(1); Colo. Rev. Stat. Ann. § 13-17-102(2).  We review for abuse of discretion. *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 389-90 (3d Cir. 2016).

9