ERIC N. VITALIANO, United States District Judge
Plaintiff Vivienne Culwick, as administratrix of the estate of Steven Eliot Wood *335 (the "Estate"), commenced this action on October 13, 2015. ( Compl., ECF No. 1 ). After twice amending it, the complaint presents claims for breach of contract, conversion, unjust enrichment, and declaratory judgment arising from the distribution of the proceeds of the decedent's annuity fund and pension plan. (Second Am. Compl. ¶¶ 34-79, ECF No. 67 ). Counterposed are counterclaims asserted by defendant Andrae E. Wood, for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract. (Answer ¶¶ 99-129, ECF No. 68 ). The parties have cross-moved for summary judgment. For the reasons that follow, the motions are granted in part and denied in part, and the matter is respectfully referred to Magistrate Judge Steven M. Gold for a report and recommendation on damages.
Background
I. Divorce
Steven Eliot Wood married Andrae E. Wood on September 24, 1984. (Def.'s Rule 56.1 Statement ¶ 6, ECF No. 94-21 ("Def.'s 56.1") ). About 12 years later, in 1996, the decedent became romantically involved with Culwick. (Id. ¶ 10). Once Andrae Wood discovered the affair, her relationship with her husband became strained. (Id. ¶ 11). With his marriage disintegrating, the decedent and Culwick would begin living together full time in 1998. (Id. ¶ 10). By 2004, the decedent and Wood were completely separated, (id. ¶ 16), and, in April 2006, Wood was granted a divorce, (id. ¶¶ 17-18).
On or about June 26, 2006, the Woods executed a property settlement agreement. (Id. ¶ 23; see Property Settlement Agreement, Decl. of Anthony J. Proscia, Ex. G, ECF No. 94-8 ("Agreement") ). This agreement was incorporated into the final judgment of divorce, entered on or about July 28, 2006. (Def.'s 56.1 ¶ 26). Three provisions of the property settlement agreement are relevant to this action. First, the agreement provides that "nothing herein contained shall require either party to renounce or disclaim any gift, devise or bequest which he or she may be given by the other's Will, Trust, or other document." (Agreement ¶ B(2)). Second, it states, "[T]he Wife agrees that the Husband shall otherwise retain all pensions and annuities acquired by him at any time, including during the term of the marriage.... The Wife waives any claims she might have in and to these benefits including the right to be named as a survivor beneficiary." (Id. ¶ D(3)). Finally, it provides that "[e]xcept as herein otherwise provided, each party may dispose of his or her property in any way." (Id. ¶ B(3)).
II. Pension & Annuity Funds
The decedent's life work was as a stagehand, and he was a member of the International Alliance of Theatrical Stage Employees, Local Union No. 1. (Def.'s 56.1 ¶ 40). As a union member, he received a variety of benefits, including an annuity fund and a pension plan, (id. ¶ 43), governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 - 1461 ("ERISA"). He had designated Andrae Wood as the primary beneficiary of the annuity and pension. (Id. ¶¶ 44, 48). He also had designated his father as the contingent beneficiary. (Id. ¶¶ 45, 49). Even after the divorce, the decedent did not change the primary beneficiary from Andrae Wood to anyone else. (Id. ¶ 59). Defendant contends that this was despite the fact that union members are frequently reminded to keep their benefit forms up to date and the forms are widely available. (Id. ¶¶ 53-58, 60-62). Culwick responds that these facts are immaterial and unsupported by documentary evidence. (Pl.'s *336 Rule 56.1 Counterstatement ¶¶ 53-58, 60-62, ECF No. 94-36 ("Pl.'s 56.1") ).
III. Steven Wood's Death
On or about December 30, 2012, death would find Steven Wood. (Def.'s 56.1 ¶ 34). He died without a will, (id. ¶ 35), and unmarried, (id. ¶ 38). He was survived by his father, the sole beneficiary of his estate. (Id. ¶ 39). In mid-February 2013, Andrae Wood learned of her former husband's death. (Id. ¶ 63). She was contacted by someone from the annuity and pension fund, who advised her that she was designated as the primary beneficiary of the decedent's funds. (Id. ¶ 64). She completed the forms necessary to transfer the benefits to her name, (id. ¶ 66), and began receiving benefits in March 2013, (id. ¶ 67).
The decedent's father and the Estate also submitted claims to the fund. (Id. ¶ 68). The fund denied these claims because Steven Wood had designated Andrae Wood as the primary beneficiary. (Id. ¶ 69). Despite receiving several demand letters, (id. ¶¶ 70-71), Andrae Wood did not relinquish the benefits to the decedent's father or the Estate, (id. ¶ 72). Later came a change in the dramatis personae . By a document executed on February 17, 2017, the decedent's father assigned to Culwick, as administratrix of the Estate, his claims against Andrae Wood arising out of her claim to the pension and annuity fund benefits. (Id. ¶ 74).
Legal Standard
A district court must grant summary judgment to the movant if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986). A court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there are issues of fact to be tried." Sutera v. Schering Corp. , 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co. , 737 F.2d 238, 244 (2d Cir. 1984) ); see also Kaytor v. Elec. Boat Corp. , 609 F.3d 537, 545 (2d Cir. 2010) (noting that, on summary judgment, "the court 'may not make credibility determinations or weigh the evidence' " (emphasis omitted) (quoting Reeves v. Sanderson Plumbing Prods. , 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed. 2d 105 (2000) )).
The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, see Jeffreys v. City of New York , 426 F.3d 549, 553 (2d Cir. 2005), and the motion court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc. , 391 F.3d 77, 83 (2d Cir. 2004) ; Gummo v. Village of Depew , 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."); Heilweil v. Mount Sinai Hosp. , 32 F.3d 718, 721 (2d Cir. 1994) (noting that summary judgment can be granted "only when no rational jury could find in favor of the nonmoving party"); Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv. , 818 F. Supp. 2d 564, 567 (E.D.N.Y. 2011) ("A court must construe all evidence in the light most favorable to the nonmoving party ....").
Whether a fact is material is dictated by the substantive law governing the claim on which summary judgment is sought. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over the facts that might *337 affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); Heilweil , 32 F.3d at 721 ("Only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute."). Thus, where the moving party "will bear the burden of proof at trial," that party bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case." Celotex Corp. , 477 U.S. at 322-23, 106 S.Ct. 2548.
If the moving party meets its initial burden, the burden shifts to the nonmoving party. See George v. Reisdorf Bros., Inc. , 410 F. App'x 382, 384 (2d Cir. 2011) (summary order). The nonmoving party may not rely solely on "conclusory allegations" or "speculation" in order to defeat a properly supported motion for summary judgment. Scotto v. Almenas , 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party can prevail by "designat[ing] specific facts showing that there is a genuine issue for trial." Celotex Corp. , 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson , 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). Moreover, when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment should be granted. Celotex Corp. , 477 U.S. at 323, 106 S.Ct. 2548.
Discussion
I. Standing
Andrae Wood first argues that Culwick lacks standing to bring this action, which, if true, would be fatal. Article III of the Constitution "limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.' " Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc. , 454 U.S. 464, 471, 102 S. Ct. 752, 70 L.Ed. 2d 700 (1982). Simply put, Supreme Court precedent requires that a plaintiff have standing to sue and that the requirements of standing continue to be satisfied throughout the litigation. Article III standing is confirmed when its three elements are present. Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992). To establish that presence, "[f]irst, the plaintiff must have suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical.' " " Id. (citations omitted); see also Spokeo, Inc. v. Robins , --- U.S. ----, 136 S. Ct. 1540, 1547-50, 194 L.Ed. 2d 635 (2016) (clarifying the concreteness requirement). "Second, there must be a causal connection between the injury and the conduct complained of." Lujan , 504 U.S. at 560, 112 S.Ct. 2130 (citation omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Id. at 561, 112 S. Ct. 2130 (citation omitted). If a plaintiff lacks standing, an action must be dismissed. See, e.g., Strubel v. Comenity Bank , 842 F.3d 181, 200 (2d Cir. 2016).
On Andrae Wood's account of history, the Estate lacks standing because it does not have a real possessory interest in the annuity fund and pension fund benefits. It is undisputed that the decedent's father was designated as the contingent beneficiary of the fund benefits. (Def.'s 56.1 ¶¶ 45, 49). As a result, had Andrae Wood waived her contractual entitlement to the benefits, as Culwick argues she was obliged to do, the benefits would have *338 passed to the decedent's father, rather than the Estate, upon his death. Defendant contends that the Estate has not suffered an injury-in-fact because, even if she did breach the property settlement agreement, it is the decedent's father, rather than the Estate, who would have been entitled to the pension benefits. Contract remedies are designed to place the contracting parties in the position they would have occupied had each party performed, and the Estate is now in that position. On defendant's account, it is the estate of the decedent's father that might present a justiciable claim.
Interpretation of the Third Circuit's opinion in Estate of Kensinger v. URL Pharma, Inc. , 674 F.3d 131 (3d Cir. 2012) is the legal ground zero for much of what the parties dispute. In Kensinger , the proceeds of an ERISA-governed 401(k) plan were paid to the late member's designated beneficiary. However, as here, the designated beneficiary had divorced the decedent. The Third Circuit held that, although payment had already been made to the decedent's ex-wife, the decedent's estate had standing to seek recovery of the funds and to enforce a waiver of her right to payment. Id. at 135. But, as defendant correctly highlights, Kensinger is inapposite here. Specifically, the decedent in Kensinger had not designated a contingent beneficiary to receive survivor benefits from his 401(k) should his ex-wife predecease him. Therefore, no one stood between the ex-wife and the estate in the line of entitlements to the 401(k). Here, the decedent, at some point, had designated his father as a contingent beneficiary, and his father, or his father's estate, would be entitled to the benefits Andrae Wood received had she waived her entitlement to payment. Consequently, Kensinger does not, without more, establish the Estate's standing here.[1]
With no guidance to be found in ERISA-specific cases, ordinary Article III standing doctrine must be deemed controlling. The present case turns on the first prong of that standard: injury in fact. To that end, defendant appears to argue that the Estate has not suffered a concrete injury. She contends that, even if she breached the terms of the property settlement agreement, the Estate would lack standing unless the breach caused it to suffer a concrete harm. In Andrae Wood's account, the Estate has not suffered such harm because it was not deprived of any pension or annuity proceeds to which it was entitled. This conclusion mimics the Supreme Court's decision in Spokeo, Inc. v. Robins , --- U.S. ----, 136 S. Ct. 1540, 1548-49, 194 L.Ed. 2d 635 (2016). Spokeo held that "Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. In other words, even when a defendant's conduct is unlawful and a plaintiff has a statutory right to sue, Article III standing, nonetheless, requires a concrete injury in fact. Id. Although Spokeo involved a statutory violation and the violation of a procedural right, it is instructive here insofar as defendant's breaching the property settlement agreement would appear not to give the Estate standing to sue absent a further injury.
*339 A yellow flag flies, however. The Spokeo Court noted that " '[c]oncrete' is not ... necessarily synonymous with 'tangible' " and explained that history may play an important role in determining whether an intangible harm is concrete. Id. Intangible harms may be concrete when they have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. Breach of contract is surely such a harm.
Justice Thomas's concurrence elaborated on this point. He offered the insight that the Court's holding was limited primarily to the public rights context and that courts could find injury more liberally when plaintiffs assert longstanding private rights. Whereas courts "have required a further showing of injury for violations of 'public rights,' " they have historically "possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more." Id. at 1551 (Thomas, J., concurring). Property rights and contract rights, which are at stake here, are classic examples of rights classified as private rights. Id. (citing 3 William Blackstone, Commentaries *130-39; Ann Woolhandler & Caleb Nelson, Does History Defeat Standing Doctrine? , 102 Mich. L. Rev. 689, 693 (2004) ). "Many traditional remedies for private-rights causes of action - such as for trespass, infringement of intellectual property, and unjust enrichment - are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right." Id. (citations omitted). As a result, "[i]n a suit for the violation of a private right, courts [have] historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded." Id. As a result, the Court must, as part of its jurisdictional analysis, determine precisely what rights were invaded and to whom those rights belonged. More pointedly, if the decedent or his Estate's rights were violated, then plaintiff has standing to sue, despite the designation of the decedent's father as the contingent beneficiary.
In base form, Culwick's claims sound in contract, conversion, or unjust enrichment. It is undisputed that the decedent and defendant entered a contract settling their property rights upon divorce. As a contracting party, the decedent's legal rights were violated if Andrae Wood breached that contract. Although the contract may have incidentally benefited the decedent's father, given his status as a contingent beneficiary of the pension and annuity, contracting parties are entitled to the benefit of their bargain, and Andrae Wood's alleged breach was a per se invasion of the decedent's contractual rights directly relevant to her ability to claim under the pension and annuity. By way of illustration, if the decedent were still alive, he would unquestionably be able to enforce any contract with his ex-wife. The Estate simply stands in the decedent's shoes, see, e.g., Graham v. Barriger , 699 F. Supp. 2d 612, 620 (S.D.N.Y. 2009), and derivatively possesses the same right of enforcement. Unlike the procedural nature of the right at issue in Spokeo , contract rights are substantive , and their invasion creates standing to sue, as courts have recognized for generations. Consequently, to the extent plaintiff pursues contract claims, plaintiff has standing as administratrix.
Culwick's next claim is for conversion. She claims that defendant unlawfully converted the proceeds of the decedent's annuity fund. (Second Am. Compl. ¶¶ 43-52). Had Andrae Wood disclaimed her interest in the annuity fund, however, the proceeds of the fund would have passed to the decedent's father or the father's *340 estate. The Estate was not deprived of any property interest. Culwick attempts to bootstrap standing, arguing that defendant's failure to waive her interest in the funds deprived the decedent's father of his right to the funds and, therefore, rendered the Estate the proper plaintiff. This argument is unpersuasive. If defendant deprived the decedent's father of his right to the funds, then the father would be the proper plaintiff here. Simply, there would be no need for the Estate to assert his rights for him.[2] Analytically, a claim for conversion under New York law[3] requires that a defendant take property belonging to the plaintiff. Colavito v. N.Y. Organ Donor Network, Inc. , 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006) ; accord Jurista v. Amerinox Processing, Inc. , 492 B.R. 707, 753 (2013) (citation omitted) (stating the same rule under New Jersey law). Yet, even on plaintiff's account, Andrae Wood took property belonging not to her or the Estate but rather to the decedent's father.[4] The Estate, therefore, lacks standing to bring an action for conversion in such circumstances.
Finally, Culwick brings a claim for unjust enrichment. As explained in Justice Thomas's Spokeo concurrence, courts have historically allowed unjust enrichment claims to proceed without a heightened *341 showing of concrete injury. Succinctly put, there was an agreement between the decedent and Andrae Wood. If she derived a benefit from the decedent's pension plan and annuity fund in contravention of that agreement, she violated the decedent's legal right to direct the proceeds of those funds, and the Court may presume injury in fact in assessing the availability of standing for an unjust enrichment claim.[5]
II. Probate Exception
Defendant next argues that this Court lacks the power to adjudicate this case, since it falls within the probate exception to federal subject matter jurisdiction. This argument is without merit. The probate exception is extraordinarily narrow, and this controversy lies beyond its borders. See Fed. Prac. & Proc. § 3610. Although "[f]ederal courts may not probate or annul a will or administer an estate," they have repeatedly held that "if the other requirements for diversity of citizenship jurisdiction are met ... district judges must exercise their subject matter jurisdiction in cases involving other ... probate related matters." Id. § 3609. "[F]ederal courts have jurisdiction to entertain suits to determine the rights of creditors, legatees, heirs, and other claimants against a decedent's estate, 'so long as the federal court does not interfere with the probate proceedings .' " Marshall v. Marshall , 547 U.S. 293, 311, 126 S. Ct. 1735, 164 L.Ed. 2d 480 (2006) (quoting Markham v. Allen , 326 U.S. 490, 494, 66 S. Ct. 296, 90 L.Ed. 256 (1946) ). Here, the parties have not indicated that there are any ongoing probate proceedings, much less any with which this Court, by the exercise of diversity jurisdiction, would interfere.
Additionally, the probate exception "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Id. This is merely "a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res , a second court will not assume in rem jurisdiction over the same res ." Id. The proceeds of the pension and annuity fund are not within the jurisdiction of a state probate court. Indeed, as defendant emphasizes in her argument about standing, the proceeds did not pass via the decedent's will but rather by contract. Because this Court's jurisdiction will not interfere with ongoing state court proceedings and will not determine entitlements to any property in the custody of a state probate court, the probate exception does not apply, and this Court possesses jurisdiction to entertain this action, unfettered by it.
III. Conversion & Unjust Enrichment
a. Statute of Limitations
Andrae Wood contends that the Estate's claims for conversion and unjust enrichment are time-barred. Because the decedent's father assigned all claims to Culwick and the assignment forms the only basis for standing as to this claim, the Court must assess whether the statute of limitations had run at the time of the assignment. See Hon Fui Hui v. E. Broadway Mall, Inc. , 4 A.D.3d 309, 310, 773 N.Y.S.2d 344 (1st Dep't 2004) (citing Trans-Res., Inc. v. Nausch Hogan & Murray , 298 A.D.2d 27, 30, 746 N.Y.S.2d 701 (1st Dep't 2002) ), rev'd on other grounds , 4 N.Y.3d 790, 828 N.E.2d 73, 795 N.Y.S.2d 157 (2005).
*342 The applicable statutes of limitations are drawn from state law. See Walker v. Armco Steel Corp. , 446 U.S. 740, 752, 100 S. Ct. 1978, 64 L.Ed. 2d 659 (1980). Under New York law, an action for conversion must be commenced within three years. N.Y. C.P.L.R. § 214(3) ; see Bryant v. Broad. Music, Inc. , 721 F. App'x 78, 81 (2d Cir. 2018) (summary order); Rattenni v. Cerreta , 285 A.D.2d 636, 637, 728 N.Y.S.2d 401 (2d Dep't 2001).[6] Moreover, "accrual runs from the date the conversion takes place and not from discovery or the exercise of due diligence to discover." Vigilant Ins. Co. of Am. v. Hous. Auth. , 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (1995) (citations omitted); compare N.Y. C.P.L.R. § 214 (listing actions to be commenced within three years), with N.Y. C.P.L.R. § 214-c (listing actions to be commenced within three years of discovery). Claims for unjust enrichment are subject to the same statute of limitations, with accrual likewise beginning upon the occurrence of the wrongful act giving rise to the duty of restitution. See Cohen v. Dunne , No. 15 Civ. 3155 (DAB), 2017 WL 4516820, at *3 (S.D.N.Y. Sept. 27, 2017) ; Lambert v. Sklar , 30 A.D.3d 564, 566, 817 N.Y.S.2d 378 (2d Dep't 2006). Wood began receiving benefits in March 2013. (Def.'s 56.1 ¶ 67). She received the first letter demanding that she return the benefits to the Estate or the decedent's father on or about June 10, 2013. (Id. ¶ 70). Therefore, at latest, the statute of limitations for these claims expired in June 2016.
Critically, however, the decedent's father assigned his claims to the Estate on February 17, 2017. (Id. ¶ 74). "An assignee takes a cause of action subject to all defenses that could have been asserted against the assignor at the time of the assignment." Hon Fui Hui , 4 A.D.3d at 310, 773 N.Y.S.2d 344. As a result, where, as here, a defendant invokes the affirmative defense of the statute of limitations, an assignee's claim is barred if it was assigned after the statute of limitations had expired. Id. Having been assigned more than one year after the statute of limitations ran, plaintiff's conversion claims are time-barred. Her unjust enrichment claims, though, do survive the limitations attack. They are not dependent on the assignment. Because they arise from the same events as the original breach of contract and conversion claims, they relate back to the date of the original complaint: October 13, 2015. See Fed. R. Civ. P. 15(c)(1)(B). This falls within the statute of limitations, and the claims are not time-barred.
b. Other Considerations
Although the unjust enrichment claims are spared from the time bar, victory is fleeting. Like plaintiff's conversion claim, they too are barred on other grounds. First, "the existence of an express contract ... precludes recovery under the equitable theory of unjust enrichment." Tomasino v. Estee Lauder Cos., Inc. , No. 13-cv-4692 (ERK) (RML), 2015 WL 4715017, at *6 (E.D.N.Y. Aug. 7, 2015) (citing IDT Corp. v. Morgan Stanley Dean Witter & Co. , 12 N.Y.3d 132, 174, 879 N.Y.S.2d 355, 907 N.E.2d 268 (N.Y. 2009) ); accord MK Strategies, LLC v. Ann Taylor Stores Corp. , 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008). Because plaintiff's claims *343 arise from the terms of the plan documents and the property settlement agreement, plaintiff cannot recover on a theory of unjust enrichment. More generally, "where a party is merely seeking to enforce its bargain, a tort claim will not lie." Encore Lake Grove Homeowners Ass'n, Inc. v. Cashin Assocs., P.C. , 111 A.D.3d 881, 883, 976 N.Y.S.2d 143 (2d Dep't 2013). As a result, plaintiff may not recover on a theory of conversion or unjust enrichment.
Furthermore, the economic loss rule bars the unjust enrichment and conversion claims. Under this rule, a plaintiff may not recover damages in tort for purely economic losses when the losses are due to breach of contract. See generally Schiavone Constr. Co. v. Elgood Mayo Corp. , 56 N.Y.2d 667, 436 N.E.2d 1322, 451 N.Y.S.2d 720 (1982) ; accord Vassallo v. Bank of N.Y. , No. 15-3227, 2016 WL 1394436, 2016 WL 1394436, at *3, 2016 U.S. Dist. LEXIS 47895, at *8 (D.N.J. Apr. 8, 2016) (quoting Duquesne Light Co. v. Westinghouse Elec. Co. , 66 F.3d 604, 618 (3d Cir. 1995) ). Some courts have questioned whether this rule applies outside the products liability context, see, e.g., Hydro Inv'rs, Inc. v. Trafalgar Power Inc. , 227 F.3d 8 (2d Cir. 2000), but plaintiff here concedes that the doctrine "has been expanded to include other torts including conversion," (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 20, ECF No. 94-37 ). Culwick's unjust enrichment and conversion claims arise solely from a breach of contract and fall squarely within the rule's prohibition. Plaintiff claims that the economic loss rule does not apply because she is bringing the action to enforce the rights of the decedent's heirs at law, who were not parties to the property settlement agreement. However, she cites no law in support of such an exception to the economic loss rule. Moreover, the estate stands in the shoes of the decedent, see, e.g., Graham , 699 F. Supp. 2d at 620, who was unquestionably a party to the contract and would, consequently, be prohibited from recovering in tort. The heirs are protected by the estate's ability to enforce the contract, despite the decedent's death, and recovery in tort would be duplicative. Therefore, the economic loss rule bars the claims for conversion and unjust enrichment.
IV. Declaratory Judgment
In the nature of additional housekeeping, Andrae Wood is entitled to summary judgment on the declaratory judgment claim because the claim is duplicative of Culwick's other claims. A declaratory judgment action "cannot be maintained [when] it parallels the other claims and merely seeks a declaration of the same rights and obligations." Campione v. Campione , 942 F. Supp. 2d 279, 285 (E.D.N.Y. 2013) (citations omitted); accord Smith v. Metro. Prop. & Liab. Ins. Co. , 629 F.2d 757, 760 (2d Cir. 1980) (citing Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp. , 348 F.2d 693, 696 (2d Cir. 1965) ).[7]
Drilling down on this cause of action, the administratrix seeks a declaration that the decedent's former wife is is in breach of the property settlement agreement and wrongfully accepted his pension benefits. (Second Am. Compl. ¶¶ 74-79). If she succeeds on her breach of contract claim, "this *344 would necessarily entail a finding by this Court" that defendant is in breach and wrongfully accepted the pension benefits. See Campione , 942 F. Supp. 2d at 285. Because "[p]laintiff['s] declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action ... the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." Sofi Classic S.A. de C.V. v. Hurowitz , 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). As a consequence, summary judgment of dismissal is granted to Wood on plaintiff's declaratory judgment claim.
V. Breach of Contract
Culwick's claims for breach of contract survive the procedural impediments that doom her other claims. Substantively, to establish a claim for breach of contract, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform [her] obligations under the contract and that the plaintiff sustained damages as a result." CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P. , 940 F. Supp. 2d 141, 151 (D.N.J. 2013) (quoting Murphy v. Implicito , 392 N.J. Super. 245, 265, 920 A.2d 678 (App. Div. 2007) ). Here, there is no dispute as to whether the parties entered into a valid contract. Plaintiff contends that Wood breached the property settlement agreement by accepting the proceeds of the decedent's pension plan and annuity fund. Specifically, she argues that Wood breached the provision stating that "the Wife agrees that the Husband shall otherwise retain all pensions and annuities acquired by him at any time, including during the term of the marriage.... The Wife waives any claims she might have in and to these benefits including the right to be named as a survivor beneficiary," (Agreement ¶ D(3)).
a. Plan Documents Rule
To begin, it would appear helpful to consider what plaintiff emphatically does not argue: namely, plaintiff does not contend that the plan administrator should have paid the benefits to anyone other than Andrae Wood.[8] Pursuant to the plan documents rule, an ERISA plan administrator must pay benefits to the person named on a beneficiary designation form or other documents and instruments governing the plan. Kennedy , 555 U.S. at 300, 129 S.Ct. 865. Absent further inter vivos action by the decedent, the property settlement agreement could not itself change the beneficiary of the pension and annuity, all of which is beside the point since what is at stake here is whether defendant was obliged to waive her entitlement to the benefits or to pay them over to another party upon receipt. Although the decedent's failure to update his beneficiary designation form following the divorce would be fatal to any claim against the plan administrator, it is not dispositive here because the instant action arises from a contractual arrangement between a plan participant and his ex-wife, rather than the terms of the ERISA plan or any controversy with the plan administrator. To the extent that Andrae Wood invokes the decedent's failure to update the plan documents, her argument misses the mark. Although this fact might be relevant extrinsic evidence of the property settlement agreement's meaning, the Court is able to interpret the agreement on its express terms and, therefore, need not, and *345 must not, look to extrinsic evidence of this stripe.
b. Revocation by Divorce
Seeking another shield, Andrae Wood contends that she is not liable because ERISA preempts New York's revocation-by-divorce statute. The state statute provides that divorce revokes any "revocable ... disposition or appointment of property made by a divorced individual to, or for the benefit of, the former spouse, including ... beneficiary designation ... in a pension or retirement benefits plan." N.Y. E.P.T.L. § 5-1.4(a). It is a red herring, however, because Culwick's claim is for breach of the property settlement agreement. It was not brought pursuant to the revocation-by-divorce statute, given Culwick's contention that Wood expressly waived her rights on the pension plan and annuity fund. That is, Culwick argues that Wood's rights were waived by contract, not by operation of statute. Since this last grasp shield does not withstand the claim, it is now appropriate to turn to the text of the agreement, to construe it, and to determine whether Culwick can establish its breach.
c. Contractual Text
The first relevant provision of the agreement states that "the Husband shall otherwise retain all pensions and annuities acquired by him at any time, including during the time of the marriage." (Agreement ¶ D(3)). This language does not bolster Culwick's cause. First, the verb "retain" suggests a preservation of the status quo. Pursuant to the agreement, the husband could keep what he had and was not obliged to cede any pensions or annuities to his former wife. However, the status quo included her designation as a beneficiary, and the language does not indicate that she was required to divest any rights in such pensions or annuities.
Moreover, ownership or control of the pension and annuity does not entail a particular designation of a beneficiary. Although the decedent retained his pension and annuity, such retention meant that he had the right to designate whomever he wished as the beneficiary. It would be consistent with this provision for the decedent to designate his ex-wife as the beneficiary, which means that the provision did not automatically revoke such a designation. The best reading of this provision is that the husband was to have full control of the pension and annuity, and to receive benefits during his lifetime. He was also to retain authority to select the beneficiary. None of this entails that defendant's designation was revoked.
The next relevant provision indicates that "[t]he Wife waives any claims she might have in and to these benefits including the right to be named as a survivor beneficiary." (Agreement ¶ D(3)).[9] This is decisive. Claiming benefits as a designated survivor beneficiary is unquestionably a claim to the pension and annuity benefits. Resultingly, defendant clearly breached the contract by claiming the benefits for herself. The Court is mindful that the property settlement was rather poorly drafted, notwithstanding that the parties were represented by counsel, (Def.'s 56.1 ¶ 20). In particular, by including the phrase "including the right to be named as a survivor beneficiary," (Agreement ¶ D(3) (emphasis added)), the agreement invited the interpretation that Andrae Wood *346 merely gave up the ability to compel the decedent to name her as a beneficiary and did not give up her existing designation as a beneficiary.[10] Yet, this interpretation would be difficult to square with the preceding phrase, in which she "waive[d] any claims she might have in and to [the pension and annuity]," (id. ). The latter phrase is best understood as clarifying that her waiver extended to the explicit survivor benefits offered by the decedent's annuity and pension. Under ERISA, the spouse of a participant in any covered plan is entitled to a statutory spousal share on the participant's death. By including a reference to defendant's explicit designation as a survivor beneficiary, the agreement clarified that it covered not only this statutory spousal share but also the explicit designation as a survivor beneficiary. Therefore, Andrae Wood breached the agreement by staking a claim to the benefits.
Naturally, the touchstone of contract interpretation is the intent of the parties, see, e.g., Pacifico v. Pacifico , 190 N.J. 258, 266, 920 A.2d 73 (2007), and this interpretation best fits the parties' only viable goal. Under ERISA, only the plan participant has the right to change the beneficiary of a pension or annuity. 29 U.S.C. § 1002(8). Therefore, had the agreement simply given the decedent the right to change the designated beneficiary, it would have awarded him only what he already had. The parties could not have intended such a result. Although it is conceivable that state law provisions on the disposition of marital property might purport to limit the decedent's ability to change the beneficiary after divorce, ERISA would preempt such provisions, see Egelhoff v. Egelhoff ex rel. Breiner , 532 U.S. 141, 147, 121 S. Ct. 1322, 149 L.Ed. 2d 264 (2001). Therefore, only one interpretation is viable: Andrae Wood disclaimed her entitlement to the benefits when she entered the agreement settling marital rights and property with the decedent.
d. Gifts
In defense of her claimed right to retain beneficiary status, defendant invokes the provision of the agreement stating that "nothing herein contained shall require either party to renounce or disclaim any gift, devise or bequest which he or she may be given by the other's Will, Trust, or other document." (Agreement ¶ 24). The pension and annuity benefits were clearly not a devise or bequest, given that the decedent died intestate. Wood contends, instead, that the benefits were a gift and that the pension and annuity designation forms fall within the definition of "other document." In response, Culwick argues that the benefits were not a gift because the designation forms were executed prior to the divorce. No law is cited in support of this claim. Plaintiff seems to argue that because the property settlement agreement waived Wood's right to the benefits, the decedent would have had to give her those benefits again for her to be entitled to them. This argument is question begging because it assumes its conclusion: in attempting to argue that the property settlement agreement was a waiver, Culwick begins from the premise *347 that it was a waiver. Therefore, this contention offers no support to Culwick.
Nonetheless, this provision of the agreement offers no lifeline to Andrae Wood either because the pension and annuity proceeds were not a gift. To count as a gift, the delivery of property to another must involve "the relinquishment by the donor of ownership and dominion over the subject matter of the gift." Adkins v. Sogliuzzo , 696 F. App'x 62, 65 n.15 (3d Cir. 2017) (quoting Pascale v. Pascale , 113 N.J. 20, 549 A.2d 782, 786 (1988) ); accord Gruen v. Gruen , 68 N.Y.2d 48, 53, 505 N.Y.S.2d 849, 496 N.E.2d 869 (1986) (explaining that a gift must be "irrevocable"). Here, it is undisputed that the decedent retained the right to change the beneficiary of his pension and annuity after naming Wood as the beneficiary. There is no sense in which defendant had dominion over the pension and annuity, and the benefits were certainly not irrevocable. Upon the decedent's death, defendant gained dominion over the payments she received, and the benefits became irrevocable, but the law requires that a donative act and donative intent coincide. The benefits were not irrevocable when the decedent "gave" them to his then wife, and as a result, his naming her as beneficiary was not a gift. Therefore, defendant finds no refuge in this provision.
e. The Staelens Case
The parties have devoted considerable attention to the out of circuit decision in Staelens , 677 F. Supp. 2d 499. There, the district court found that a separation agreement according to which "[e]ach party agree[d] that they [would] retain their separate pension agreements and plans ... and renounce any interest in the pension of the other" did not require a spousal beneficiary to relinquish her interest in her husband's pension when, as here, the husband had not updated the plan documents. Id. at 510. The court's decision was based, first, on the lack of specificity in the agreement and, second, on policy considerations stemming from the Supreme Court's Kennedy opinion. In the instant case, there is no indication that the language of the property settlement agreement was insufficiently specific. Therefore, to the extent that Staelens may inform the Court's analysis, it is only the policy discussion that is relevant.
In Staelens , the court opined that in light of Kennedy 's plan documents rule, according to which a plan administrator must distribute benefits only to beneficiaries designated on plan forms, courts should not allow subsequent lawsuits to reallocate benefits to a party not listed on those forms. Id. at 507-08. This rule did not follow directly from Kennedy , where the Court expressly left open the question of whether an estate may bring an action against a named beneficiary to obtain benefits after they have been distributed. Kennedy , 555 U.S. at 300 n.10, 129 S.Ct. 865.[11] Instead, the Staelens court held that to allow post-distribution lawsuits would undermine the uniform administrative scheme established by ERISA and the plan documents rule. As discussed below, this overly-wooden approach grants far broader preemptive effect to ERISA than is necessary to effectuate the plan documents rule.[12]
*348 The Staelens court bolstered its conclusion by invoking ERISA's express provision for qualified domestic relations orders ("QDROs"). This provision allows plan participants to file certain state-court orders with their plan administrators and thereby assign their plan benefits. See 29 U.S.C. § 1056(d)(3). Certain judgments of divorce would qualify under this provision and, if filed with a plan administrator, effect a change in the plan beneficiary, even without the execution of a new beneficiary designation form. See Kennedy , 555 U.S. at 301-03, 129 S.Ct. 865. However, construing this provision to preclude contractual arrangements among plan participants and beneficiaries would similarly grant far too great preemptive effect to ERISA, allowing it to displace much of state contract and domestic relations law.
ERISA's preemption provision states that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Although ERISA's preemption provision is "broadly worded" and "clearly expansive," the Supreme Court has cautioned against taking the provision "to extend to the furthest stretch of its indeterminacy," for fear that "pre-emption would never run its course." Egelhoff , 532 U.S. at 146, 121 S.Ct. 1322. It has held that preemption is appropriate when state law "interferes with nationally uniform plan administration," as by subjecting plans to different legal obligations in different states. Id. at 148, 121 S. Ct. 1322. Preemption is also appropriate when state law would interfere with a plan administrator's ability to determine the beneficiaries of an ERISA plan. Id. at 148-49, 121 S. Ct. 1322. Here, no difficult issues of conflicting state law are presented by allowing the parties to make contractual arrangements to dispose of ERISA benefits after payment. The parties agree that New Jersey law applies, and although New York arguably has an interest in this controversy, relevant provisions of its law are identical to New Jersey law. Moreover, the property settlement agreement does not place any obligation on the plan administrator to discern a beneficiary other than the one listed on the plan documents. Even on plaintiff's account, the plan administrator rightly offered benefits to defendant, and it was her obligation to waive payment and to remit payment to the contingent beneficiary. Unlike the Egelhoff case, the plan administrator here did not need to refer to state domestic relations law to determine the beneficiary.[13] The plan documents indisputably determined who the plan administrator should pay, and only the parties needed to consult the property settlement agreement to resolve their lingering dispute. Therefore, neither of the policy considerations behind preemption applies, and it would be improper to allow ERISA's provision for QDROs to effectively *349 preempt state contract and domestic relations law.
Illuminated by its facts, Staelens 's textual analysis is irrelevant in this case, and its policy arguments are unconvincing. Although distributing the proceeds of the pension and annuity would undoubtedly have been simpler had the decedent changed the beneficiary on the plan documents, it does not follow that allowing the Estate to sue after benefits were distributed would introduce such confusion as to undermine ERISA's system of uniform plan administration. Because Andrae Wood violated the terms of the property settlement agreement, she is liable for breach of contract, regardless of the name on the plan documents.
f. Damages
Although defendant breached the agreement by accepting pension and annuity benefits, it does not follow that the Estate is entitled to payment of those benefits. Contract damages are designed to "plac[e] the aggrieved party in the same economic position it would have been in had both parties fully performed." Bausch & Lomb Inc. v. Bressler , 977 F.2d 720, 728-29 (2d Cir. 1992). As Wood noted in her argument regarding standing, the Estate was not the contingent beneficiary of the pension and annuity. Rather, the decedent's father stood to receive the benefits in the event that Wood waived them. Therefore, the Estate's entitlement to contract damages flows through the father's assignment of his claims to the Estate.
Although not named in the property settlement agreement, the decedent's father was an intended third-party beneficiary of that agreement. A person is a third-party beneficiary with standing to enforce a contract if "the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties.' " Grand Street Artists v. Gen. Elec. Co. , 19 F. Supp. 2d 242, 253 (D.N.J. 1998) (quoting Grant v. Coca-Cola Bottling Co. , 780 F. Supp. 246 (D.N.J. 1991) ). "[I]n other words, the benefit to [the third-party] must have been, to some extent, a motivating factor in the parties' decision to enter the contract." Id. (quoting Broadway Maintenance Corp. v. Rutgers , 90 N.J. 253, 259, 447 A.2d 906 (1982) ); accord Restatement (Second) of Contracts § 302 (1979). "To decide whether the contracting parties intended to make [the decedent's father] an intended beneficiary, the court must look to the terms of the agreement and the surrounding circumstances." Grand Street Artists , 19 F. Supp. 2d at 263 (citing Grant , 780 F. Supp. at 249 ; Broadway Maintenance , 90 N.J. at 259, 447 A.2d 906 ).
In this case, the surrounding circumstances demonstrate that the decedent intended to give the benefit of defendant's promised performance to his father. As defendant herself repeatedly highlights, after signing the property settlement agreement, the decedent never changed the beneficiaries listed on the pension and annuity plan documents. Although this detail could not be considered in interpreting the agreement, being extrinsic evidence, it is an appropriate fact to evaluate in determining whether the decedent's father was an intended beneficiary of the property settlement agreement, see id. Having selected his father as the contingent beneficiary of his benefit plans and having executed the property settlement agreement under the guidance of counsel, the decedent was aware that, upon defendant's waiving her entitlement to the proceeds, they would pass to the decedent's father. By signing the property settlement agreement, therefore, the decedent consciously awarded the proceeds of his pension and annuity funds to his father, in the event *350 that he should predecease his father. Being an intended third-party beneficiary of the property settlement agreement, the decedent's father was entitled to enforce the agreement, and having assigned his claims to the Estate, any damages owed to the decedent's father are now owed to the Estate.
Because this case sounds in contract, the expectation of the decedent's father represents the proper measure of damages. See, e.g., Petron Scientech, Inc. v. Zapletal , 701 F. App'x 138, 141 (3d Cir. 2017) (summary order) (citing Furst v. Einstein Moomjy, Inc. , 182 N.J. 1, 13, 860 A.2d 435 (2004) ). This requires the Court to note a caveat regarding the pension benefits. Because the decedent's father was named as the contingent beneficiary and was entitled to the pension benefits, those benefits accrued only until his death. Although he predeceased defendant, defendant may have continued to collect benefits after his death because she remained alive. Although defendant was not entitled to these benefits, they are not owed to the Estate as contract damages because the decedent's father was not entitled to them either. Whether the ERISA plan may recover benefits paid after the decedent's father died is a question the Court need not, and does not, reach.
The record on summary judgment is sparse on numerical detail regarding damages owed. Various values of the annuity fund are reported in an assortment of exhibits, and nothing speaks to the value of the pension benefits accrued. Moreover, plaintiff demands attorney's fees, but the record contains no contemporaneous time records and no demand for a particular sum. The question whether plaintiffs are entitled to attorney's fees and, if so, in what amount is respectfully referred to Magistrate Judge Steven M. Gold for a report and recommendation. Furthermore, if defendant agrees to waive her previous demand for a jury trial, the matter will be respectfully referred to Magistrate Judge Gold for a report and recommendation on contract damages, as well.
Damages shall include prejudgment and postjudgment interest. "The awarding of prejudgment interest is considered a question of substantive law [and] state law applies to calculation of prejudgment interest." Schwimmer v. Allstate Ins. Co. , 176 F.3d 648, 650 (2d Cir. 1999) (citing Marfia v. T.C. Ziraat Bankasi , 147 F.3d 83, 90 (2d Cir. 1998) ). "Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state, here New York, to determine which state's substantive law applies." Id. Because New Jersey law governs the breach of contract claim, see note 3, supra , it governs the issue of prejudgment interest on that claim, as well. "Pursuant to New Jersey law, prejudgment interest may be awarded on contract claims in the discretion of the court in accordance with equitable principles." De Puy Inc. v. Biomedical Eng'g Tr. , 216 F. Supp. 2d 358, 380 (D.N.J. 2001) (citing Sulcov v. 2100 Linwood Owners, Inc. , 303 N.J. Super. 13, 38, 696 A.2d 31 (App. Div. 1997) ). Here, "[t]he equitable purpose of prejudgment interest" would be served by such an award because it would "compensate [the Estate] for lost earnings on a sum of money to which it was entitled, but which has been retained by [defendant]." Id. (quoting N. Bergen Rex Transp. , 158 N.J. at 574-75, 730 A.2d 843 ). Consequently, plaintiff is entitled to prejudgment interest.[14] The matter is respectfully *351 referred to Magistrate Judge Gold for a report and recommendation on the applicable interest rate and the amount of prejudgment interest owed.
VI. Counterclaims
In her cross-motion, Culwick seeks summary judgment on defendant's counterclaims. She argues, first, that defendant was required to seek leave of the Court before bringing her counterclaims and, second, that she has not stated a plausible claim.
a. Leave of Court
Defendant did not assert any counterclaims in her answer to Culwick's original complaint. Instead, she added the counterclaims in her answer to the first amended complaint and amended the counterclaims in her answer to the second amended complaint. District courts in this circuit are divided as to whether a defendant may assert new counterclaims in an answer to an amended complaint when the counterclaims could have been raised in the response to the original complaint. The Second Circuit has not yet addressed the issue, and the case law is "all over the map." Christians of Cal., Inc. v. Clive Christian Furniture Ltd. , No. 13 Civ. 275 (LTS) (JCF), 2014 WL 982889, at *2 (S.D.N.Y. Mar. 11, 2014) (quoting Purchase Partners, LLC v. Carver Fed. Sav. Bank , No. 09 Civ. 9687 (JMF), 2013 WL 1499417, at *6 (S.D.N.Y. Apr. 10, 2013) ).
District courts have taken "three general approaches to this issue." SNET v. Global NAPS, Inc. , No. 04-cv-2075 (JCH), 2007 WL 521162, at *2 (D. Conn. Feb. 14, 2007). Some courts allow a defendant to amend its answer as of right, regardless of the scope of the changes in the amended complaint. See, e.g., Am. Home Prod. Corp. v. Johnson & Johnson , 111 F.R.D. 448, 453 (S.D.N.Y. 1986). Others confine the changes in a defendant's answer to the specific amendments to the complaint. See, e.g., Wechsler v. Hunt Health Systems, Ltd. , 186 F. Supp. 2d 402, 415 (S.D.N.Y. 2002). Still others measure the extent of the permissible amendments to the answer in relation to the scope of the amendments to the complaint: if a plaintiff changes its theory of the case or adds new claims, the defendant may do the same. See, e.g., In re Bank of N.Y. Mellon Corp. Forex Transactions Litig. , 42 F. Supp. 3d 520, 525 (S.D.N.Y. 2014) ; SNET , 2007 WL 521162, at *2 (explaining that the third approach contains "no requirement that a defendant specifically tailor its answer to the amended complaint" but rather asks "whether the defendant's answer affects the scope of the litigation in a manner commensurate with the amended complaint").
The Court declines to intervene in this debate within the circuit. In the next section, the Court rejects the counterclaims on the merits. As a result, deciding whether the counterclaims were procedurally proper is unnecessary and, given the lack of binding precedent, would involve a greater expenditure of judicial capital than is appropriate here.
b. Merits
The Estate is entitled to summary judgment on defendant's breach of contract counterclaim. The conclusion rests on the argument that the Estate breached by instituting this litigation. However, it is defendant who breached the contract, and the Estate was, consequently, entitled to seek relief in court. Indeed, the property settlement agreement expressly contemplated disputes between the parties and provided that they could resort to judicial process if they failed to settle disputes by *352 negotiation and agreement. (Agreement ¶ 10). Therefore, the Estate has not breached the property settlement agreement and is entitled to summary judgment.
Next, Andrae Wood's counterclaim for breach of the implied covenant of good faith and fair dealing cannot survive summary judgment either. "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs. , 182 N.J. 210, 225, 864 A.2d 387 (2005) (quoting Wilson v. Amerada Hess Corp. , 168 N.J. 236, 251, 773 A.2d 1121 (2001) ); accord Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc. , 487 F.3d 89, 100 (2d Cir. 2007) (holding that motive is relevant under New York law, as well). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." Wilson , 168 N.J. at 251, 773 A.2d 1121.
Here, there is no evidence in the record to suggest bad motive or intention. Defendant has produced nothing probative of plaintiff's motives. She contends that the Estate is attempting to recapture a benefit it bargained away in the property settlement agreement: the proceeds of the pension and annuity. As discussed above, although defendant breached the property settlement agreement, the Estate is not entitled to the proceeds of the pension and annuity. Nonetheless, even if Culwick incorrectly interpreted the agreement as entitling the Estate to the proceeds, her interpretation is as consistent with a good-faith mistake as with a bad-faith attempt to undermine defendant's now determined to be unjustified expectations. Moreover, defendant concedes that her ex-husband retained the right to change the designated beneficiary and to deprive her of the benefits. Therefore, she cannot maintain that this lawsuit is an attempt to recapture what, she meritlessly contends, the decedent bargained away under the property settlement agreement. With no evidence of motive or frustration of Wood's expectations under the contract - an essential element of breach of the implied covenant - the counterclaim fails on summary judgment. See Celotex Corp. , 477 U.S. at 323, 106 S.Ct. 2548.
Finally, Culwick is entitled to summary judgment on Andrae Wood's counterclaim for tortious interference. Because the Estate stands in the shoes of the decedent, see Graham , 699 F. Supp. 2d at 620 - a party to the contract - the Estate may not be sued for tortious interference. "[O]nly a stranger to a contract, such as a third party, can be held liable for tortious interference with the contract." Thompson v. Bosswick , 855 F. Supp. 2d 67, 88 (S.D.N.Y. 2012) (alteration in original) (citation omitted); accord Nostrame v. Santiago , 420 N.J. Super. 427, 436-37, 22 A.3d 20 (App. Div. 2011). Assuming without deciding that Culwick could be sued in her individual capacity for tortious interference, Culwick is not an individual party to this case, so tortious interference may not be brought as a counterclaim. See Fed. R. Civ. P. 13. Therefore, the Estate is granted summary judgment on the tortious interference counterclaim.
Conclusion
For the foregoing reasons, the parties' cross-motions are granted to the extent that defendant is awarded summary judgment on the conversion, unjust enrichment, and declaratory judgment claims, and plaintiff is granted summary judgment on its breach of contract claims, as well as each of defendant's counterclaims. The Estate will be awarded damages in an amount to be determined following a jury *353 trial or an inquest by Magistrate Judge Gold.
So Ordered.

Importantly for plaintiff, Kensinger does establish that even after an ERISA plan administrator has paid benefits to the designated beneficiary, in accordance with the plan documents rule, see generally Kennedy v. Plan Adm'r for DuPont Savings & Inv. Plan , 555 U.S. 285, 129 S. Ct. 865, 172 L.Ed. 2d 662 (2009) (holding that a plan administrator must pay benefits to the beneficiary listed on the plan documents), an estate of the deceased ERISA member may sue the recipient to recover the benefits. Kensinger , 674 F.3d at 135.

Because the decedent's father is no longer alive, his estate would be the proper party to stand in here in his stead, but his estate is not a party here.

The parties alternate between New York and New Jersey law in their arguments. The best the Court can discern is that the parties see the contract claims as governed by New Jersey law and the other claims as governed by New York law. "Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." Thea v. Kleinhandler , 807 F.3d 492, 497 (2d Cir. 2015) (citing Klaxon Co. v. Stentor Elec. Mfg. Co. , 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ; Forest Park Pictures v. Universal Television Network, Inc. , 683 F.3d 424, 433 (2d Cir. 2012) ). Applying New York's choice of law rules, the first step in the choice-of-law analysis "is to determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co. (Stolarz ), 81 N.Y.2d 219, 222, 613 N.E.2d 936, 597 N.Y.S.2d 904 (1993). Fortunately, in this case, New York and New Jersey law differ only with respect to the applicable statute of limitations for conversion and unjust enrichment claims. Defendant's brief invokes the New York statute of limitations, and plaintiff does not argue that New Jersey's statute of limitations should apply, so the Court will apply New York law for timing purposes. See note 6, infra . Otherwise, the Court will invoke the shared rules of New York and New Jersey law.

Following the commencement of this action, the decedent's father assigned his interest in the pension and annuity to Culwick. Although an assignment may confer standing on an assignee, W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP , 549 F.3d 100, 107 (2d Cir. 2008), the assignment is irrelevant here because standing is assessed at the outset of the action, Mhany Mgmt., Inc. v. County of Nassau , 819 F.3d 581, 600 (2d Cir. 2016). There is some unclarity as to the effect of an amended complaint, but the majority view among the federal courts appears to be that standing must exist when the original complaint is filed because a court without jurisdiction does not have jurisdiction to consider an amended complaint. See, e.g., Morlan v. Universal Guar. Life Ins. Co. , 298 F.3d 609, 617 (7th Cir. 2002) ; Perry v. Village of Arlington Heights , 186 F.3d 826, 830 (7th Cir. 1999) ; Thome v. U.S. Food & Drug Admin. , No. C 11-676 PSG, 2011 WL 3206910, at *2 (N.D. Cal. July 27, 2011) ; Dupree v. Prudential Ins. Co. of Am. , No. 99-8337-Civ., 2007 WL 2263892, at *33 (S.D. Fla. Aug. 7, 2007). Although some courts have held that standing must be assessed only when a claim is first brought or a party is first joined, see, e.g., Saleh v. Fed. Bureau of Prisons , No. 05-cv-02467 (PAB) (KLM), 2009 WL 3158120, at *5 & n.7 (D. Colo. Sept. 29, 2009), only the claim for unjust enrichment as to the annuity was brought after the assignment. As a result, the father's post-filing assignment is insufficient to confer standing with respect to the conversion claim.

The existence of a contract figures in the argument for plaintiff's standing, but, as discussed below, the existence of a contract is, on the other edge of the sword, fatal to the unjust enrichment claim.

New Jersey applies a six-year statute of limitations for both conversion and unjust enrichment, see N.J. Stat. Ann. § 2A:14-1, but plaintiff has not argued that New Jersey law governs the unjust enrichment or conversion claim. The parties appear to agree that, whereas the property settlement agreement and divorce were effectuated in New Jersey, the alleged conversion and unjust enrichment occurred in New York. As a result, the Court applies the three-year New York statute of limitations discussed in each party's briefing.

Although "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate," Fed. R. Civ. P. 57, Second Circuit precedent clearly allows a district court to decline to hear a declaratory judgment claim when a duplicative claim has also been brought. Courts may sustain the declaratory judgment claim when, for example, the declaratory judgment is necessary to prevent future multiplicitous litigation, see, e.g. , Pateley Assocs. I, LLC v. Pitney Bowes, Inc. , 704 F. Supp. 2d 140, 151-52 (D. Conn. 2010), but there is no indication that such litigation would follow here.

For this reason, ERISA's anti-alienation provision, according to which "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), is not controlling.

For this waiver to be effective, it must have been entered knowingly and voluntarily. See, e.g., McPeak v. S-L Distrib. Co., Inc. , No. 12-348 (RBK/KMW), 2014 WL 4388562, at *5 (D.N.J. Sept. 5, 2014). There is not a whit of admissible proof that these criteria were not met here, so the Court will not devote further attention to this issue.

A court in the District of Massachusetts adopted this interpretation of a separation agreement, explaining that the "waiver, if waiver it was, simply opened the door for [the husband] to change the designation." Staelens ex rel. Estate of Staelens v. Staelens , 677 F. Supp. 2d 499, 510 (2010). In Staelens , the separation agreement provided that the husband "reserve[d] the right to revoke or change any Beneficiary designation," id. , a statement that is more susceptible to this interpretation than the language of the instant agreement.

Several courts have filled the gap left by Kennedy by holding that post-distribution lawsuits by an estate against a beneficiary are permissible despite the plan documents rule. See, e.g., Kensinger , 674 F.3d 131 ; Andochick v. Byrd , 709 F.3d 296, 299 (4th Cir. 2013) ; Hallingby v. Hallingby , 693 F. Supp. 2d 360, 368 (S.D.N.Y. 2010) ; In re Christie , 152 A.D.3d 765, 767, 59 N.Y.S.3d 421 (2d Dep't 2017).

The Staelens court did not couch its holding in terms of preemption, but insofar as the court declined to apply state contract law given its threat to the regulatory scheme set forth in ERISA, it effectively based its holding on conflict preemption principles. Cf., e.g., Geier v. Am. Honda Motor Co., Inc. , 529 U.S. 861, 870, 120 S. Ct. 1913, 146 L.Ed. 2d 914 (2000) (explaining that conflict preemption analysis asks whether applying state law "would upset the careful regulatory scheme established by federal law" (quoting United States v. Locke , 529 U.S. 89, 106-07, 120 S. Ct. 1135, 146 L.Ed. 2d 69 (2000) ).

In Egelhoff , the Supreme Court held that Washington's revocation by divorce statute was preempted by ERISA. Applying the statute would have required the plan administrator to determine which state's law applied and then to determine how to distribute benefits in light of state law. Contractual reallocation of benefits after payments are disbursed does not present these issues.

The Court would reach the same result under New York law, which requires, by rule, that a prevailing plaintiff in a breach of contract case be awarded prejudgment interest. See N.Y. C.P.L.R. § 5001 ; Norte v. Umami Sustainable Seafood, Inc. , 769 F.3d 44, 51-52, 2019 WL 2000369, at *4 (2d Cir. May 7, 2019).