23-1174-cv
*Culwick v. Wood*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of May, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*.

_____

VIVIENNE CULWICK, AS ADMINISTRATOR
OF THE ESTATE OF STEVEN ELIOT WOOD,

> *Plaintiff-Counter-Defendant-Appellee*,

v.                                                                      23-1174-cv

ANDRAE E. WOOD, AKA ANDRAE E. KIPIN,

> *Defendant-Counter-Claimant-Appellant*.

_____

FOR DEFENDANT-COUNTER-
CLAIMANT-APPELLANT:

ANTHONY J. PROSCIA (Adam M. Marshall, *on the brief*), Kaufman Dolowich LLP, New York, New York.

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLEE:

PERRY S. FRIEDMAN, New York, New York.

Appeal from the judgment of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on July 19, 2023, is **AFFIRMED**.

Defendant-Counter-Claimant-Appellant Andrae E. Wood ("Wood') appeals the award of summary judgment in favor of Plaintiff-Counter-Defendant-Appellee Vivienne Culwick, as Administratrix of the Estate of Steven Eliot Wood (the "Estate"), on the Estate's breach of contract claim, the denial of summary judgment in Wood's favor on that same claim, and the award of damages against Wood in the sum of $924,818.35, plus post-judgment interest. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

The Estate alleges that, in 2013, after the death of her former husband Steven Eliot Wood (the "Decedent"), Wood wrongfully accepted annuity and pension benefits from the Decedent's prior employment based upon her designation as the primary beneficiary on certain forms executed in 1984 (the "Designation Forms"). According to the second amended complaint, Wood waived her right to these benefits in the Property Settlement Agreement (the "PSA") that Wood and the Decedent entered into at the time of their divorce in 2006, and thus, even though the Decedent never removed Wood as the primary beneficiary on the Designation Forms, the Decedent's father was entitled to those benefits as the contingent beneficiary named in the Designation Forms. Upon learning that Wood had claimed and accepted the Decedent's annuity and pension benefits, the Decedent's father assigned to Culwick, as administratrix of the Estate, his claims against Wood

for the pension and annuity fund benefits. Culwick then brought the instant lawsuit in 2015, alleging several causes of action against Wood, including a breach of contract claim, and Wood asserted several counterclaims. Both parties moved for summary judgment.

On May 18, 2019, the district court issued a Memorandum and Order granting summary judgment in favor of the Estate on the breach of contract claim against Wood and denying Wood's cross-motion for summary judgment on that same claim.[1] *See generally Culwick v. Wood*, 384 F. Supp. 3d 328 (E.D.N.Y. 2019) ("*Culwick I*"). In particular, the district court held that: (1) the Estate had standing to bring the lawsuit; (2) the "probate exception" to federal subject matter jurisdiction did not apply and the court possessed jurisdiction over the lawsuit; (3) Wood breached the PSA by accepting the proceeds of the Decedent's annuity fund and pension plan, and thus, was liable on the breach of contract claim; and (4) the Decedent's father was an intended third-party beneficiary of that agreement, and thus, the Estate's entitlement to the contractual damages flows through the father's assignment of his claim to the Estate. *Id.* at 337–50.

Pursuant to Federal Rule of Civil Procedure 54(b), Wood moved for reconsideration of the district court's order granting summary judgment to the Estate on its breach of contract claim and, in the alternative, requested that the district court certify an interlocutory appeal from that order, pursuant to 28 U.S.C. § 1292(b). The district court granted the motion, but only to the extent that, upon reconsideration, it adhered to its original determination. *See generally Culwick v. Wood*, No. 15-cv-5868 (ENV) (SMG), 2019 WL 9663013 (E.D.N.Y. Aug. 14, 2019) ("*Culwick II*"). It also denied the request for interlocutory certification. *Id.* at *1.

---

[1] The district court granted summary judgment to Wood on the Estate's other claims and granted summary judgment to the Estate on Wood's counterclaims. The district court's resolution of these claims is not challenged on appeal.

On the issue of damages, Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation ("R&R") on September 9, 2021, recommending that the Estate be awarded a total of $908,994.37, which comprised $574,901.24 for the annuity disbursement, plus $139,255.72 in accumulated pre-judgment interest on that amount; $103,319.43 for the pension benefit payments; $89,616.00 for attorney's fees; and $1,901.98 in costs. *See generally Culwick v. Wood*, No. 15-cv-5868 (ENV) (CLP), 2021 WL 7906500 (E.D.N.Y. Sept. 9, 2021) ("*Culwick III*"). The R&R also recommended that the Estate's request for pre-judgment interest on the pension benefit award be denied without prejudice, in order to allow the Estate to provide additional information regarding that calculation. *Id.* at *10. The R&R further recommended that post-judgment interest be awarded. *Id.* at *12. On October 28, 2022, the district judge issued a Memorandum and Order, rejecting the objections filed by the parties and adopting the R&R in its entirety. *See generally Culwick v. Wood*, No. 15-cv-5868 (ENV) (CLP), 2022 WL 16230836 (E.D.N.Y. Oct. 28, 2022) ("*Culwick IV*"). On May 15, 2023, after the Estate filed an additional affidavit, Magistrate Judge Pollak issued another R&R, which recommended that the Estate be awarded $15,823.98 in pre-judgment interest on the pension benefit award, *see generally Culwick v. Wood*, No. 15-cv-5868 (ENV) (CLP), 2023 WL 4490367 (E.D.N.Y. May 15, 2023) ("*Culwick V*"), and which was adopted by the district judge, *see* Dist. Ct. Dkt. Minute Entry July 12, 2023. This appeal followed.

**DISCUSSION**

We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor. *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d. 102, 108 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

On appeal, Wood argues that the district court erred in: (1) granting summary judgment to the Estate on the breach of contract claim; (2) determining that the Decedent's father was an intended beneficiary of the PSA, and the Estate, as the assignee of his claims, was entitled to the contractual damages resulting from the breach; (3) denying Wood's request to toll the accumulation of pre-judgment interest; and (4) awarding excessive attorney's fees. As set forth below, we find each of these arguments unpersuasive.

## I. Breach of Contract[2]

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013). The Supreme Court of New Jersey has instructed that "[w]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction and we must enforce those terms as written." *Kutzin v. Pirnie*, 124 N.J. 500, 507 (1991) (internal quotation marks and citation omitted). Therefore, "[w]e will affirm a grant of summary judgment in a breach of contract action only where the contract is unambiguous and the moving party is entitled to judgment as a matter of law." *Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Ill.*, 162 F.3d 789, 791 (3d Cir. 1998).

---

[2] The parties do not dispute that New Jersey law applies to the breach of contract claim, as well as to Wood's challenges to the award of pre-judgment interest and attorney's fees.

Wood argues that the language in the PSA is "ambiguous at best," and thus, the district court erred in granting summary judgment to the Estate and denying her cross-motion for summary judgment. Appellant's Br. at 33. We disagree.

Paragraph (D)(3) of the PSA states that the Decedent "shall otherwise retain all pensions and annuities acquired by him at any time, including during the term of the marriage," and that Wood waived "any claims she might have in and to these benefits including the right to be named as a survivor beneficiary." App'x at 159. Therefore, the plain language of this provision barred Wood from claiming the Decedent's pension and annuity benefits as a survivor beneficiary. Wood contends that, notwithstanding that language, the PSA did not prevent the Decedent from choosing to keep her as the primary beneficiary of the annuity and pension and thus it does not preclude her from claiming those benefits. However, "there is no room for [that] interpretation or construction," *Kutzin*, 124 N.J. at 507, because the language in the PSA clearly and unambiguously states that Wood relinquished "*any claims* she might have in and to these benefits," without any limitations, temporal or otherwise, App'x at 159 (emphasis added). In sum, the district court correctly held that, because Wood claimed the Decedent's benefits as a survivor beneficiary, she breached the PSA, and the Estate was entitled to summary judgment on its breach of contract claim.[3]

## II.    Third-Party Beneficiary

Wood also contends that the district court erred in holding that, "[b]eing an intended third-party beneficiary of the [PSA], the [D]ecedent's father was entitled to enforce the agreement, and having assigned his claims to the Estate, any damages owed to the [D]ecedent's father are now

---

[3] Wood also asserts that the district court should have dismissed the Estate's breach of contract claim because the Estate failed to establish that it had suffered actual or nominal damages. We disagree. The record clearly indicates that Wood's breach of the PSA caused damages, and, as explained *infra*, the Estate was entitled to damages flowing from that breach because, as the district court correctly determined, the Decedent's father was a third-party beneficiary of the PSA, and "having assigned his claims to the Estate, any damages owed to [him] are now owed to the Estate." *Culwick I*, 384 F. Supp 3d at 350.

6

owed to the Estate." *Culwick I*, 384 F. Supp. 3d at 350. In particular, Wood asserts that the district court, in reaching this determination, failed to properly address whether she, upon entering the agreement, intended for the Decedent's father to be a third-party beneficiary under the PSA. We disagree.

To determine whether an individual is a "third-party beneficiary" under New Jersey law, we "focus[] on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." *Ross v. Lowitz*, 222 N.J. 494, 513 (2015) (internal quotation marks and citation omitted). Here, because the PSA required Wood to waive her right to any claim for benefits as a survivor beneficiary, the parties clearly intended that another person—namely, whoever would become the survivor beneficiary in Wood's place—would benefit from that provision. In other words, protecting another person's right to those pension and annuity benefits was the entire purpose, rather than an "unintended incident," of that contractual provision. *Id.*

Wood counters that there is no evidence that the Decedent specifically intended that his father be the beneficiary of the PSA and notes: "Indeed, the Estate asserted in its summary judgment papers that the Decedent simply neglected to change the Designation Forms in the years following the divorce and opined that the Father's continued status as contingent beneficiary for the Annuity and Pension was coincidental." Appellant's Reply Br. at 11. Moreover, with respect to her intention in signing the PSA, Wood emphasizes that "there is no evidence in the record that [she] knew of the existence or identity of a contingent beneficiary for the Annuity and Pension." *Id.* However, these arguments miss the mark.

New Jersey law does not require that parties to a contract specifically name the beneficiary in that contract in order to confer third-party beneficiary status. Nor is there a requirement that the

7

contracting parties have a specific person or entity in mind when creating the benefit. Instead, "the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention." *Broadway Maint. Corp. v. Rutgers*, 90 N.J. 253, 259 (1982) (internal quotation marks and citation omitted). Thus, it is sufficient that "the parties to the contract intended others to benefit from the existence of the contract," even if the identity of the intended beneficiary was not specifically agreed upon. *Id.*; *see also Pollack v. Quick Quality Rests., Inc.*, 452 N.J. Super. 174, 186 (App. Div. 2017) (explaining that, to confer rights on a third-party beneficiary, "[t]he contract need not specifically identify the [intended beneficiary], as long as the pertinent provisions of the contract and the surrounding circumstances demonstrate the parties intended the [third party] to receive a direct benefit from the contract" (internal quotation marks and citation omitted)); *Eschle v. E. Freight Ways, Inc.*, 128 N.J. Super. 299, 305 (Law. Div. 1974) ("The fact that [the intended beneficiary]'s identity may not have been known at the time the contract . . . was made does not prevent them from assuming the status of third party beneficiaries."). Here, at the time the contract was formed, both parties evinced an intention that *a* third party would receive a direct benefit, namely the Decedent's pension and annuity, which is sufficient under New Jersey law to confer third-party beneficiary rights. Therefore, the district court did not err in finding that the Decedent's father was a third-party beneficiary of the PSA and that, as the assignee of the father's claims, the Estate was entitled to damages resulting from Wood's breach of the PSA.

Finally, we find Wood's procedural challenges to the district court's determination— including that she was not given notice of the third-party beneficiary theory and was denied an opportunity to present evidence to rebut this theory—to be similarly unavailing. As a threshold

8

matter, as the district court catalogued in its denial of the reconsideration motion, "the record is replete with language documenting [Wood]'s awareness of the factual and legal prerequisites for recovery on a third-party beneficiary theory of damages." *Culwick II*, 2019 WL 9663013, at *3. Thus, on this record, we agree with the district court that "[Wood] was unquestionably aware that, on the contractual interpretation advanced by [the Estate] and later adopted by the Court, the [D]ecedent's father, a third-party, was the one who stood to benefit from the contract." *Id.*

In any event, even assuming *arguendo* that Wood lacked notice that the district court could grant summary judgment on this third-party beneficiary theory, she must demonstrate that she was prejudiced by her inability to present additional evidence. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139–40 (2d Cir. 2000) ("A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position. If, however, the party either cannot claim to have been surprised by the district court's action or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice." (internal citation omitted)). Wood has not demonstrated that she was prejudiced because her briefing with respect to the reconsideration motion made clear that she had no additional evidence that could impact the third-party beneficiary determination. To be sure, Wood suggests that "the legal briefs in support of the Reconsideration Motion clearly expressed Wood's desire to present additional relevant evidence concerning whether she executed the PSA intending to confer a benefit on the Decedent's [f]ather (she didn't); and whether Wood was even aware that there was a contingent beneficiary for the Annuity and Pension in 2006 (she wasn't)." Appellant's Reply Br. at 8–9. However, as noted *supra*, any additional evidence regarding her lack of intent to confer a benefit on the Decedent's father or her lack of awareness in 2006 of a contingent beneficiary for the annuity and pension

benefits does not advance the correct inquiry under New Jersey law on the issue, and thus, any additional evidence could not undermine the district court's determination that, "by entering the contract, she objectively evinced an intention to confer a benefit on the contingent beneficiary of the pension and annuity." *Culwick II*, 2019 WL 9663013, at *6 n.3; *see SmithKline Beecham Corp. v. Rohm and Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996) ("Under New Jersey law, courts should interpret a contract considering the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction." (internal quotation marks and citation omitted)). Therefore, Wood was not procedurally prejudiced by the district court's consideration of the third-party beneficiary issue in connection with the Estate's summary judgment motion.

### III. Pre-Judgment Interest

Wood argues that pre-judgment interest should be tolled under New Jersey law. We generally review awards of pre-judgment interest for abuse of discretion. *See New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602–03 (2d Cir. 2003). As set forth below, we discern no abuse of discretion in the district court's determination to award such interest.

Under New Jersey law, "[p]rejudgment interest may be awarded on contract claims in the discretion of the court in accordance with equitable principles." *Sulcov v. 2100 Linwood Owners, Inc.*, 303 N.J. Super. 13, 38 (App. Div. 1997). The "equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 574–75 (1999) (internal quotation marks and citation omitted). Moreover, although a court can toll or suspend the payment of the usual pre-judgment interest in contract cases under exceptional circumstances, that power should be exercised "sparingly." *Id.*; *see also Salas by Salas v. Wang*,

846 F.2d 897, 909 (3d Cir. 1988) ("New Jersey courts have found exceptional circumstances on the basis of equitable considerations when plaintiff is at fault or the litigation is delayed by court order or where defendant is not fully insured." (alterations adopted) (internal quotation marks and citation omitted)).

Wood principally argues that "[t]he reopening of discovery at the Estate's request on August 28, 2019 warrants a limited tolling of prejudgment interest." Appellant's Br. at 40. In recommending that the district court deny Wood's request to toll the accumulation of pre-judgment interest, which the district court adopted, *Culwick IV*, 2022 WL 16230836, at \*5, Magistrate Judge Pollak rejected this precise argument, explaining in relevant part:

> This case does not present exceptional circumstances warranting tolling. The delays that occurred during the progression of this case occurred during the normal course of the litigation. Plaintiff's request to reopen discovery after the motion for summary judgment was decided was granted by the court, indicating that the court considered it to be a good faith request and not a tactic to delay proceedings.

*Culwick III*, 2021 WL 7906500, at \*11. Wood suggests that, even if the request was made in good faith, the pre-judgment interest nevertheless should have been tolled because of "the Estate's inexcusable lack of diligence" and "the fact that the District Court was complicit in the delay." Appellant's Br. at 41. However, this conclusory, unsupported assertion does not provide sufficient grounds for us to conclude that the district court abused its discretion in determining that Wood failed to demonstrate exceptional circumstances warranting tolling of the pre-judgment interest.

### IV. Attorney's Fees

Wood argues that the award of attorney's fees, pursuant to a fee-shifting provision in the PSA, was unreasonable because the district court should have: (1) reduced the hourly rate of the Estate's counsel, Perry S. Friedman, to $350 per hour (rather than $400 per hour); (2) reduced the number of billed hours in 2015 and 2016 because of the limited relationship of that work to the

Estate's subsequent success; and (3) reduced the number of billed hours in 2019 and 2020 because of overbilling.[4]

We review an award of attorney's fees for reasonableness "in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion." *Matthew Bender & Co. v. W. Publ'g. Co.*, 240 F.3d 116, 121 (2d Cir. 2001) (internal quotation marks and citation omitted); *accord Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107–08 (2d Cir. 2014). "The starting point in awarding attorneys' fees is the determination of the lodestar, which equals the number of hours reasonably expended multiplied by a reasonable hourly rate." *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 21 (2004) (internal quotation marks and citation omitted). In determining the hourly rate, "the court should evaluate the rate of the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *Id.* at 22 (internal quotation marks and citation omitted). When determining the number of hours reasonably expended, "a trial court must determine whether the time expended in pursuit of the interests to be vindicated, the underlying statutory objectives, and recoverable damages is equivalent to the time competent counsel reasonably would have expended to achieve a comparable result." *Id.* (internal quotation marks and citation omitted).

We find that Wood's challenges to the fee award are without merit. With respect to Friedman's hourly rate, Magistrate Judge Pollak found that the rate of $400 per hour "adequately reflects his experience, the work counsel performed, and the nature and complexity of the case," *Culwick III*, 2021 WL 7906500, at *19—a finding that was adopted by the district court, *Culwick*

---

[4] Wood also argues that the Estate was not entitled to fees because the damages in this case are nominal. That argument is unavailing, however, because the damages awarded, totaling $678,220.67, are clearly not nominal. *See Culwick II,* 2021 WL 7906500, at *4.

*IV*, 2022 WL 16230836, at \*5—and we see no basis to disturb that reasonable exercise of discretion in setting rates based upon the applicable factors. As to the number of hours billed in 2015 and 2016, Magistrate Judge Pollak correctly noted that, "[a]lthough the district court dismissed the conversion claim as barred by the statute of limitations and the unjust enrichment claim as precluded by the contract claim, there is no question that these two unsuccessful claims arose from the same common core of facts and circumstances as the breach-of-contract claim—namely, [Wood]'s agreement not to claim the [D]ecedent's [a]nnuity and pension benefits." *Culwick III*, 2021 WL 7906500, at \*21 (internal quotation marks and citation omitted); *see Singer v. State*, 95 N.J. 487, 500 (1984) ("[I]f a plaintiff's unsuccessful claims are related to the successful claims, either by a common core of facts or related legal theories, the court must consider the significance of the overall relief obtained to determine whether those hours devoted to the unsuccessful claims should be compensated." (internal quotation marks and citation omitted)); *N. Bergen Rex Transp., Inc.*, 158 N.J. at 571 ("The party seeking attorneys' fees need not recover all relief sought, but rather, there must be the settling of some dispute that affected the behavior of the party asked to pay attorneys' fees towards the party seeking attorneys' fees." (alterations adopted) (internal quotation marks and citation omitted)). Indeed, although it did not prevail on every claim, the Estate obtained the entirety of relief sought in that it received all money damages identified in the complaint, which supports an award for attorney's fees without any reduction for the unsuccessful claims. *See Singer*, 95 N.J. at 500. Thus, there is no basis to conclude that the district court, in adopting the recommendation of Magistrate Judge Pollak, abused its discretion in declining to reduce the number of billed hours during the 2015 and 2016 timeframe.

Finally, we find equally unpersuasive Wood's argument that the district court erred in declining to reduce the number of billed hours in 2019 and 2020 due to overbilling. Magistrate

Judge Pollak recommended an across-the-board reduction of 10 percent because "[t]he time that [the Estate's] counsel claims to have spent on at least some of the tasks that he documents for this period appears to be somewhat excessive for an attorney of his level of experience," *Culwick III*, 2021 WL 7906500, at \*23, and the district court adopted that recommendation, *Culwick IV*, 2022 WL 16230836, at \*5. Wood nevertheless asserts that the district court should have imposed an across-the-board reduction of 35 percent. Under New Jersey law, "[w]hether the hours the prevailing attorney devoted to any part of a case are excessive ultimately requires consideration of what is reasonable under the circumstances." *Furst*, 182 N.J. at 22–23. Here, the district court did not abuse its discretion in determining that the reduction of 10 percent, rather than some higher percentage, was reasonable.

*       *       *

We have considered Wood's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court